Amanda Messner and Samuel J. Heath, for himself and as trustee, Pearl Ramsey, Bessie Heath, Estella Heath, Samuel J. Heath and Julia Elliott, minors, *v.* Mary S. Elliott, Appellant.

*Wills—Issue devisavit vel non—Testamentary capacity—Relevancy and order of testimony—Practice, C. P.*

In the trial of an issue devisavit vel non, the passing upon the relevancy of evidence, the order of its admission, the mode of examining witnesses, etc., must be left very much to the sound discretion of the trial judge, and it is incumbent on a party complaining, not only to point out technical error, but also to satisfy the appellate court that he or she was prejudiced thereby.

*Wills—Issue devisavit vel non—Evidence—Opinions of witnesses.*

On the trial of an issue devisavit vel non, it is not error for the court to charge that in determining testamentary capacity, the facts as to business transactions of the testator are of much more value than the opinions of witnesses.

*Wills—Undue influence—Evidence—Testamentary capacity.*

Where the making and executing of an alleged will are not denied, testamentary capacity and the absence of undue influence will be presumed, and such presumption will stand until overcome by the weight of testimony.

Where there is no evidence that a beneficiary in a will solicited the bequest himself, or wrote the will or procured it to be written, or that his advice was sought or taken, the existence of intimate friendly relations between the testator and the beneficiary, such as living with him, nursing him and managing his business, do not import undue influence, or shift the burden of proof from those who allege it.

Argued Oct. 26, 1897. Appeal, No. 77, Oct. T., 1897, by defendant, from judgment of C. P. No. 2, Allegheny Co., April T., 1895, No. 223, on verdict for plaintiffs. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Issue devisavit vel non. · Before MAGEE, J.

At the trial it appeared that the issue was to determine (1) testamentary capacity; (2) undue influence.

Under the terms of the alleged will, Mary Elliott, the only child of the decedent was disinherited. The chief beneficiary under the will was Amanda Messner, who had lived with decedent for a year and a half before her death. Bequests were also made to the children of Samuel J. Heath who was appointed executor. Heath was a relative of the decedent's husband. The evidence tended to show that the contestant lived in another part of the county and seldom or never visited her mother.

Margaret Belsar, a witness for defendant, having testified that she was an intimate friend of and frequent visitor at the house of testatrix, was asked, " What was her custom about the use of opium? "

Objected to as too general. Objection sustained and bill sealed for defendant. [11]

Philip O'Hara, a witness for defendant, having testified that testatrix was generally under the influence of liquor or opium,

was asked, " Will you state whether or not at any time she was not able to converse with you ? "

Objected to as leading. Objection sustained and bill sealed for defendant. [13]

Julia Culp, a witness for defendant, having testified in a deposition that she was a sister and near neighbor of testatrix, testified as follows : " After she took her bed she did not talk sensible. I cannot recollect what foolish things she did or said."

Upon objection this portion of her deposition was excluded and bill sealed for defendant. [14]

Upon objection the court also excluded from Julia Culp's deposition the following : " I tried time after time to get her to quit using the stuff, but she could not talk sensible about it." Bill sealed for defendant. [15]

The court also excluded from the deposition : " She said they were tormenting her to make a will. I did not ask her who was tormenting her." Bill sealed for defendant. [16]

On objection the court excluded from the deposition of John S. Lytle, a witness for defendant, " Q. Do you know whether she became more addicted to the use of whisky in the last years of her life ? A. Well, I thought she did." Bill sealed for defendant. [18]

The court admitted under objection and exception the following testimony of F. R. Storer, a witness for plaintiff, " Q. On that occasion did she seem to be under the influence of liquor or any drug ? A. Not that I could notice." [20]

E. P. Douglass, an attorney-at-law, a witness for plaintiffs, testified to certain interviews and a business transaction which he had had with testatrix, and he was then permitted to testify under objection and exception as follows : " Q. From those interviews and that business transaction I wish you would state whether in your opinion she was able to transact business. A. I thought from my conversation with Mrs. Heath at that time that she was a woman who was amply able to take care of her affairs. [21] Q. How was her conversation, Mr. Douglass, connected or disconnected ? A. I didn't see any difference between her conversation and that of the ordinary client who comes in and wants a job of that kind done." [22]

W. S. Fenton, a witness for plaintiffs, testified under objection and exception as follows : " Q. How did she converse, in

a connected manner or disconnected manner? A. In my opinion she talked very intelligently. I thought she was an intelligent woman. [23] Q. What is your opinion as to her ability to transact business? A. I thought she was perfectly competent to transact business. She fully understood the business,—the purpose I was there for,—for to get her return of moneys at interest; and she gave it to me and fully understood it was necessary to be qualified, and led me to understand she fully understood business." [24]

J. M. Shoaf, a witness for plaintiffs, testified under objection and exception: "Q. Well, then, Mr. Shoaf, what was your opinion as to her ability to transact business? A. I thought she was fully competent to transact the business I was doing with her or I would not have done business with her." [25]

Thomas Reynolds, a witness for plaintiffs, testified under objection and exception: "Q. I wish you would state what your opinion was and is as to her ability to transact business. A. I think she was perfectly competent to transact business. [26] Q. And how was it as being rational? A. I considered her conversation rational." [27]

The court charged in part as follows:

The facts which have been introduced by a number of witnesses on the part of the contestant of the will, Mrs. Elliott, are to the effect that Mrs. Heath, from 1865, to the day of her death, indulged in the use of whisky, and that the indulgence of the appetite for drink grew so that, at and before March 15, 1892, the date of the will, she was consuming a quart of whisky daily; that during the same period she used, at first laudanum, and then opium, and that before the making of the will and afterwards, she used the drug in large quantities. Dr. Hart stated that she used six hundred grains in a little over three days, and another witness stated it was one and a half ounces a week. The effect of the indulgence in these articles is presented in the testimony. Now, the drinking of whisky and the taking of opium did not necessarily incapacitate her from transacting business, but the fact of her indulgence, and the conduct on the part of Mrs. Heath, and her condition at the time of the execution of the will, and at times prior and subsequent thereto, are shown by the testimony, which, it is contended by the de-

fendant, indicate an enfeebled and shattered intellect, and that
it destroyed her capacity to know and appreciate what she was
doing. Most of the witnesses of the defendant confined her
want of capacity to do business to a time some years prior to
the making of the will. Some of the witnesses, and I think I
may say all, have given certain acts and conduct and indulgence
in liquor and opium by the testatrix, upon which they have
based their opinion that Mrs. Heath, at the time of the making
of her will, was not competent to do business, and as a conse-
quence, not capable of making a will. The acts spoken of are
of various kinds, such as foolish remarks, broken and discon-
nected conversation, appearing in her nightgown on two or three
or perhaps more occasions, flighty at times and stupid at times,
reckless in the care and disposition of her money, in bed a great
deal of her time, never free from the influence of liquor and
opium, and some witnesses say she had a defective memory
of her doings from day to day; she requested different ones to
prepare her will for her; that some time after her will had been
made, she said she had been told she had made a will, and that
it was through Samuel Heath; but that it was not her will;
different money transactions are detailed, as tending to show
want of capacity to do business. These things, and perhaps
many others, which perhaps I have not recalled, but which
counsel have directed your attention to, have been submitted to
you as facts and circumstances upon which you are to pass, in
connection with the entire evidence in the case. You will
observe that I have not gone into the details of the evidence,
but have merely intended to suggest to you what I consider to
be an outline of the contention of the contestant of the will,
and the general character of the evidence presented. With the
aid of the discussion of the evidence by the counsel, you will
have had your memories refreshed and your attention called to
the important matters in the evidence, in the opinion and judg-
ment of the counsel. The office of counsel is not to make facts
for you, but to aid you to a correct conclusion from the facts in
evidence, and upon which you, under the law, are to rest your
verdict. You have the duty resting upon you of finding the
facts from the evidence, and in no other way. The law you
will take from the court, and apply it to the facts as you find
them, from all the evidence before you.

Now, it appears by the evidence that there were two men in whom Mrs. Heath seemed to have placed confidence in her business transactions, if consultation about some business transactions, money payments, and the collections of some of her notes committed to his care is evidence of confidence on her part in the men; these two men are Samuel Heath and John Lytle, and both occupied that attitude toward the testatrix, whatever consideration that fact is entitled to have in your judgment as affecting either the weight to be attached to their evidence or the question of undue influence exercised.

The plaintiffs—those who defend the will—say that Mrs. Heath had testamentary capacity, and that no undue influence was used to procure the execution of the will. In support of the validity of the will, they have submitted to you testimony as to the acts, conduct, various business transactions, etc., of the testatrix. I need not recall them to you; you will remember them. And they have presented the opinion of men who, from their acquaintance with her and what they know and saw of her, thought she was capable of transacting business. The witnesses to the will, one of whom wrote it, have detailed to you the circumstances which led to the making and execution of the will, and have detailed to you Mrs. Heath's mental and physical condition at the time and the attending circumstances. From their knowledge and opinion, they say that at the time she signed the will she was capable of transacting business. Many other witnesses have been produced, who have given the conversations and business transactions with her of which they had knowledge, or in which they took part with Mrs. Heath at and about the time of the execution of the will, and who say that they saw no indication of liquor or opium on her, and that she talked and acted intelligently and reasonably in all these matters. Some of them say that they had heard, and others that they had not heard, that she used whisky and opium, and some say that they know she used whisky and opium, and that their opinions are given with the knowledge, and others gave their opinions without any such knowledge. They say further, that she bought property in August, 1891, and made and paid for improvements and repairs and sewers to the house; that she received payments on her mortgage; discussed the amount of her mortgages and money at interest with the assessor, in Jan-

uary, and in November, or sometime during 1892, I believe it was—

By Mr. Rodgers : 1892.

—made a deed for some coal mine, and made her acknowledgment of the deed ; that she kept her bank account in the bank of Pittsburg, and drew checks, and so forth, made all the gas leases and other things to which your attention has been called by counsel; acts and conduct which the plaintiffs contend show her capacity to do business at the time the will was signed.

We have endeavored to have before you any acts of the testatrix, which in the opinion of the court, tend to show either capacity or incapacity to transact business at the time of the making of the will, or which tend to show that the will was procured by the use of undue influence, fraud, or imposition. It is from a consideration of these acts and the opinions of the witnesses expressed that the issues before you are to be determined, and you are the judges of the credibility of the witnesses, the soundness of their opinions and the effect of the facts, as you find them from the evidence before you.

Now, gentlemen, before I call your attention to the law of the case, let me impress upon you your imperative duty to take into consideration, in your deliberation, the entire evidence in the case, whether referred to by the court or counsel in what has been said by either of us. The responsibility rests upon you of finding the facts from the evidence and of rendering a true verdict under the law. In what I have said I have not intended to make any facts for you, nor to intimate any conclusions you should draw from the evidence.

Let me now call your attention to matters of law to be observed by you in reaching your verdict on the facts as you may find them from the evidence. Testamentary capacity is the power or fitness of a person to make a will or a disposition of his property to take effect after death. It is the possession of a sound mind and disposing memory. In Wilson v. Mitchell, a case which the Supreme Court passed upon in 101 Pa. 495, and reaffirmed subsequently in other cases, it is said : " A man of sound mind and disposing memory is one who has a full and intelligent knowledge of the act he is engaged in, and a full knowledge of the property he possesses, and an intelligent perception and understanding of the disposition he desires to make

of it, and of the persons and objects he desires shall be the recipients of his bounty. It is not necessary that he collects all these in one review. If he understands in detail all that he is about, and chooses with understanding and reason between one disposition and another, it is sufficient for the making of a will." And the authorities of the Court sustained that decision: Daniel v. Daniel, 39 Pa. 191; Tawney v. Long, 76 Pa. 106. "If from any cause he is so enfeebled in mind as to be incapable of knowing the property he possesses, of appreciating the effect of any disposition made by him of it, and of understanding to whom he intends to bequeath it, he is without the requisite testamentary capacity: Leech v. Leech, 21 Pa. 67." It is also a settled rule that on a question of testamentary capacity the opinions of witnesses are competent evidence when they state facts as the ground for their opinion, and their opinions are entitled to the consideration of the jury. What is mental competency to make a will or to give truthful testimony is a question which must depend very greatly upon the opinion of those who have had the opportunity of observing the conduct of the party and the power of the intellectual faculties. Facts and circumstances are to be sworn to as the groundwork of the opinions offered, and as affording tests of the soundness of their opinion; but the jury must primarily rely upon these facts and circumstances as affording a test of the soundness of the opinions given; in other words, do the facts and circumstances, in the judgment of the jury, warrant the expression of a sound opinion? If they do not, the opinion, in my judgment, can give no weight to the facts and circumstances. It may give weight to the facts and circumstances if you consider them sufficient, because there are other things that may be involved in the opinions expressed— other things than those stated. If he does not state anything that warrants the opinion, then the opinion is not a sound one, and could not add anything to the weight of the facts. That is my judgment about opinions. As the law I give it to you. It has been held by our highest authority that neither age nor sickness, nor extreme distress, nor debility of body will affect the capacity to make a will, if sufficient intelligence remains. The failure of memory is not sufficient to create the incapacity, unless it be total, or extend to his immediate family or property. If it is sufficient to do that, that is all that is required. The

want of the recollection of names is one of the early symptoms of the decay of memory, but this failure may extend to a very great degree and yet the power of understanding remain. Wills are to be regarded as sacred things, and not lightly or inconsiderately to be annulled. Assaults made upon such instruments, therefore, demand careful consideration and satisfactory proof before they are permitted to prevail; and therefore a solemn writing of that kind, executed in due form and according to the requirements of law, and the will duly executed by testatrix of lawful age, is presumed to be the unbiased as well as the intelligent expression of the will of such testatrix, and on those who aver either testamentary incapacity or undue influence rests the burden of proof, and that would be upon the defendants in this case. [The making and executing of the paper not having been denied, testamentary capacity and the absence of undue influence are to be presumed, and such presumption stands until overcome by the weight of testimony;] [5] and in determining these issues, the variety of opinions expressed, their soundness and the veracity of the witnesses are matters practically in the province of the jury, and with which the court has nothing to do, so I am not stating anything with regard to the facts, but only giving the law which you are to apply to the facts.

When a will is drawn in favor of those occupying a confidential relation, who either write or procure it to be written, or whose advice is sought and taken in the making of the will, the burden rests on such beneficiaries to disprove undue influence, and they have accepted that burden by offering testimony to show that no undue influence was used. [There is no evidence that the beneficiary solicited the bequest or wrote the will or procured it to be written, or that his advice was sought or taken. In such a case, intimate, friendly relations between the testator and the beneficiary, such as living with him and nursing him and managing his business, do not import undue influence, or shift the burden of proof from those who allege it.] [6] . . . . Extreme old age and the ordinary infirmities, physical and mental, incident to the intemperate use of opium, do not constitute in themselves testamentary incapacity, or undue influence. [The evidence, however, which tends to show mental incapacity, if joined with acts that tend to show that the testatrix was

under the will and control of others to the exclusion of all individuality, all thought and action on her part, then the evidence points to both testamentary incapacity and undue influence, with as much probability to one as the other;] [7] in other words, if the evidence does not establish testamentary incapacity, it may tend to show undue influence, and, in like manner, if insufficient to establish undue influence, the evidence may tend to show testamentary incapacity. Although there is evidence on the part of the contestants, that Mrs. Heath indulged in the excessive use of whisky and opium, and was thereby rendered incapable of exercising testamentary capacity, and was unduly influenced in its execution by those around her, this alleged want of capacity must, from such indulgence, be shown to exist at the time of the execution of the will, and the incapacity produced thereby must go to the extent of disqualifying the testatrix from knowing and appreciating the nature, effect and consequences of the act she engaged in, in order to invalidate the will. If she managed and controlled her property and transacted her own business affairs, made her own contracts and purchases and payments, and the public and relatives and acquaintances dealt with her as capable in these respects up to the time of the making of the will and to the time of her death, it would indicate very strongly her capacity to make a will, notwithstanding the fact that at times, and it may be frequently, she was shown, by acts and conduct, by her conversation and her indulgence in the use of whisky and opium, that she was not in a fit condition for the transaction of business, because they do not necessarily import want of capacity in these things that have been suggested, unless they have gone to that degree that at the time the will was made she had not the knowledge necessary to distinguish what she was doing, or that she was not a free agent from the control of other people.

It is alleged in this case that undue influence, fraud, or imposition was used to procure the execution of the will. It may be that the testamentary capacity of the testatrix was influenced by the will of another, so as to make the will an imposition or fraud upon the testatrix and those whom she desires to make the recipients of her bounty. To constitute undue influence, in the language of Judge WOODWARD, there must be a present, constant operating on the mind of the testator in the very act

of making the instrument, and there must be some evidence tending legitimately to show that some fraud had been practiced at the time of the making of the will, or that some misrepresentation had been made, or that some physical or moral constraint has been exercised, so as to destroy his free agency. No moral or physical constraint is to be inferred from mental weakness alone. That undue influence which suffices to destroy an alleged will is distinct from weakness, and has no necessary connection with it. A man may be very weak and yet very competent to make a will; in other words, undue influence does not mean legally that influence which is acquired over a testator by acts of kindness or other acts of that character, calculated to inspire affection and confidence; neither does it mean honest advice or suggestions. If, in this view of the law, as I have stated the law on undue influence, you can see anything in the evidence that can fairly and reasonably be regarded in that light as undue influence, you will give it proper weight and consideration in your deliberations. Honest advice and kind acts and treatment do not import undue influence in the disposition made by the will.

Plaintiffs' points and the answers thereto among others were as follows:

3. In determining testamentary capacity the facts as to business transactions of a testator are of much more value than the opinions of witnesses. *Answer:* This point is affirmed. [1]

4. But little weight is to be attached to the opinions of witnesses who say that the testator was not competent to transact business, when, in fact, these witnesses state that they had dealings with her during the period in which she was incompetent, and who further say that she was incompetent to transact business at the very time at which they transacted business with her. *Answer:* This point affirmed. [2]

Defendant's points and the answers thereto among others were as follows:

6. If the jury find that Sam'l J. Heath, the executor named in the will, was active in procuring its execution, and that he and his family derived considerable benefit from the will, and further find that the said Sam'l J. Heath was the business adviser of the testatrix, and as such had the opportunity to influence her in the making of her will, the presumption would be, that

undue influence was brought to bear on the testatrix by him, and the burden would be on the plaintiffs to rebut this presumption. *Answer:* This point is affirmed. Where the devise is attributed solely to confidential relationship it may be presumed that undue influence was brought to bear on the testatrix, and the burden is then cast upon the plaintiffs to rebut this presumption. [3]

7. If the jury find that the testatrix has a daughter who was her sole natural heir, and who received no benefit under her will, and that the principal part of the estate was given to strangers, these facts throw a strong suspicion on the validity of the will, and under these circumstances strong proof of capacity and volition are required to sustain it, and slight proof of undue influence or fraud to set it aside. *Answer:* I am not willing to affirm this point as stated. I am not willing to say what degree of suspicion is thrown on the validity of the will by the facts stated, nor to say that the will is to be set aside by slight proof of undue influence or fraud. You have all the facts before you by which you are to determine the validity of the will and that by the weight of the testimony submitted to you. I do not think that the dispositions of the will are made to strangers in the sense that they are made to persons for whom the testatrix had no interest or personal connection. The Heaths were not strangers to a woman who was the widow of a Heath, and Amanda Messner who lived with her for a year and a half before her death, and who lived with her and her husband for several years on the farm, ought not to be regarded as a stranger to the testatrix. [4]

Verdict and judgment for plaintiffs. Defendant appealed.

*Errors assigned* among others were (1–7) above instructions, quoting them; (11, 13–16, 18, 20–27) rulings on evidence, quoting the bills of exception.

*R. B. Petty,* for appellant.—It is entirely within the province of the jury to weigh the evidence submitted to them, and while the judge may express his opinion as to the evidence he cannot as a matter of law say that the evidence of a certain witness is entitled to more weight than that of others: Ins. Co. *v.* Rodel, 95 U. S. 238; Hickman *v.* Jones, 76 U. S. 197; Spear *v.* R. R.,

119 Pa. 61; Philpott v. R. R., 175 Pa. 570; Cline v. Lindsey, 110 Ind. 337; Durham v. Smith, 120 Ind. 463; Long v. State, 23 Neb. 33; State v. Huffman, 16 Pacific Repr. 640.

The opinion of witnesses, the result of observed facts, is the highest and most direct evidence the nature of the question can afford: Shaver v. McCarthy, 110 Pa. 346; Swails v. White, 149 Pa. 261; Beaubien v. Cicotte, 12 Mich. 459; Appleby v. Brock, 76 Mo. 318.

Whenever the provisions of a will are inconsistent with natural justice it will require strong proof of capacity and volition to sustain it, and slight proof of undue influence or fraud to set it aside: 1 Wharton & Stille's Medical Jurisprudence, sec. 77; Schouler on Wills, sec. 238.

When a testator, although possessed of testamentary capacity, is aged, bodily infirm, with mental faculties impaired, if a confidential adviser be largely a beneficiary under the will, there is a presumption of fraud: Armor's Est., 154 Pa. 517; Yardley v. Cuthbertson, 108 Pa. 395; Wilson v. Mitchell, 101 Pa. 495.

Undue influence may be exercised secretly as well as openly, and this is especially possible when the devisee and testator live in the same house: Herster v. Herster, 116 Pa. 627; Boyd v. Boyd, 66 Pa. 293; McTaggart v. Thompson, 14 Pa. 149.

The rule as to the admission of opinion evidence requires a much more intimate acquaintance than that of any of the witnesses produced, and all of those opinions should have been excluded: Bank v. Wirebach, 106 Pa. 37; Elcessor v. Elcessor, 146 Pa. 359.

*W. B. Rodgers*, for appellees, cited Eddey's App., 109 Pa. 420.

PER CURIAM, January 3, 1898:

This issue was awarded to determine the validity of a paper purporting to be the last will of Elizabeth A. Heath which was contested on the grounds of testamentary incapacity and undue influence. The evidence, which is quite voluminous, involved questions of fact which were necessarily for the jury, and the case was accordingly submitted to them with instructions which, on the whole, appear to be adequate and free from any error that requires a reversal of the judgment.

There was no error in affirming plaintiffs' third and fourth points, recited in the first and second specifications, nor in the qualified answers given to defendant's sixth and seventh points, recited in the third and fourth specifications. In view of the facts which the testimony tended to prove, and the form in which these points were presented, the answers were not improper or erroneous.

Considered in their relation to other portions of the charge, the excerpts, recited in the fifth to seventh specifications, inclusive, are free from substantial error. The subjects of complaint in the remaining thirty specifications are the learned judge's rulings on questions of evidence referred to therein respectively. A careful consideration of these has not convinced us that any of them should be sustained. In conducting the trial of cases such as this, passing upon the relevancy of evidence, the order of its admission, the mode of examining witnesses, etc., very much must be left to the sound discretion of the trial judge. It is incumbent on the party complaining not only to point out technical error but to satisfy us that he or she was prejudiced thereby. Innoxious error is no ground of reversal. A careful consideration of this record has not satisfied us that there is any such error therein as would justify a reversal of the judgment. A detailed discussion of the very numerous specifications of error is unnecessary. It would consume much time to no useful purpose.

Judgment affirmed.