# Kane's Estate.

*Will—Probate—Issue devisavit vel non—Testamentary capacity—Undue influence.*

In an issue devisavit vel non where the testimony of the counsel who drew the will and the physician who attended the testator at the time, is positive as to testamentary capacity, there is a prima facie case which requires very strong evidence to offset.

In such cases the testator's actions and conduct of his business are of far more weight than the opinions of medical experts or the gossip of neighbors.

Evidence discussed and held insufficient to justify submission to jury.

Argued March 10, 1903. Appeal, No. 197, Oct. T., 1902, by Ursula Breen, from decree of O. C. Allegheny Co., Nov. T., 1900, No. 168, dismissing appeal from register of wills in estate of Michael C. Kane, deceased. Before MITCHELL, DEAN, BROWN and MESTREZAT, JJ. Affirmed.

Appeal from register of wills admitting will to probate.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*William B. Rodgers,* with him *William Le Goullon* and *A. M. O'Brien,* for appellant.

*Johns McCleave,* of *Watson & McCleave,* for appellee.

OPINION BY MR. JUSTICE MITCHELL, May 18, 1903:

The member of the bar who wrote the testator's will had known him well as a client and otherwise for many years. He testified clearly and positively to the circumstances, how testator came to the court room in search of him and finding him occupied waited until lunch time, went then with him to his office, talked awhile about other matters of mutual interest and then gave directions for his will. The will was written and executed there, witnessed by Mr. McKenna and a student in his office. Being asked about an executor, testator named his brother Patrick, the beneficiary, and to a question whether he had said anything to Patrick about the will, replied that he had not, he wanted to surprise him. McKenna's testimony was positive that he saw no impairment of testator's mind, nor any change from what he had always seen in him.

It further appeared in the undisputed evidence that the testator had been in business for many years, at first and for the larger part of the time with his brother, but afterwards by himself, and had accumulated a moderate fortune, chiefly during the later years when he had conducted a separate business by himself without even the aid of a clerk. This continued down to the date of the execution of the will.

On the other hand it was conceded that the testator died in May, 1900, insane. The will was made September 21, 1896,

and it was shown that on September 19 he had had a congestive attack which he called a rush of blood to the head and which was variously described by others as apoplexy, an " apoplectiform attack," a " stroke," and " a slight stroke." He recovered and returned to his business on September 19, made his will on September 21 as already related, and continued in discharge of his business until October 1, when he had another and more severe attack of the same kind, and subsequently others which terminated in his admitted insanity in the summer of 1897. The crucial inquiry here is upon the state of his mind on September 21, 1896, when he made his will. Dr. Ayres the physician who attended him for the attack of September 11, 1896, had attended his niece in the same house a year previously and had been his physician from that time. He testified that the testator's mental condition was " perfectly normal " by September 16 or 17, so that no further visits to the patient's house were necessary, and that he had " made a complete recovery."

Other witnesses, including two physicians, business men with whom he dealt, neighbors and others, all of whom had known the testator for some years, gave testimony to business and personal relations with him and to his entire mental competency down to and including September, 1896.

The contestant on the other hand produced four medical witnesses, as to testator's mental condition. The first was a graduate of 1899 who did not see the testator until the fall of 1899 when he was brought to the hospital, another attended him in the summer of 1897 until the arrival of Dr. Ayres, his regular physician, and the last, called in rebuttal, never saw him at all and testified only in answer to suggested hypothetical questions. All three must be considered only as experts, testifying to deductions from conditions long subsequent to the date of the will, which they had observed or had had stated to them. The real burden of the medical testimony for the contestant was borne by Dr. Kearns. This witness who had known the testator many years testified to having prescribed for him as early as 1881, and gave in considerable detail the nature of the disease, its progress and its anticipated result. Without dwelling on particulars they are summed up in the assertion of this witness that the testator had " incipient dementia " as far back as 1882. The testimony does not commend itself by

clearness or consistency but accepting it for its face value it is deprived of substantial weight by proving too much. A dementia so " incipient " that it allowed the sufferer to continue in business for fourteen years and by his own exertions accumulate a fortune before any business associate or acquaintance suspected a want of mental capacity may present an interesting medical problem, but may be safely disregarded in a legal inquiry into his testamentary competency.

Besides this medical testimony a large number of other witnesses were produced as to failure of memory, peculiarities of action, etc., on the part of testator, from which they inferred want of mental capacity. Most of them were women who gave no indication of knowing what testamentary capacity is and whose testimony was mostly the tattling neighborhood gossip which is usually so plentiful in cases of this kind. A regiment of such witnesses should be outweighed by the clear, positive and intelligent testimony of men who knew what they were talking about, such as the scrivener who wrote the will and the physician who attended the testator in his illness shortly preceding.

As already said the crucial question here is the condition of the testator's mind at the date of the will. All testimony on other points is relevant and material only so far as it bears on this. The direct, clear and positive testimony as to the circumstances attending the making of this will is convincing. The draftsman of a will, especially if a lawyer or conveyancer, is always an important and usually the most important witness in the case, and where as here he had known the testator well for a long time and shows such circumstances of voluntary and intelligent action by testator at the time, his testimony makes a prima facie case that requires very strong evidence to offset.

The only evidence in this case which could raise a reasonable doubt of testamentary capacity prior to the making of the will, is the congestive or apoplectic attack on September 11. Without that the loose gossip about failing memory, etc., would not stand a moment's consideration. But the physician who attended the testator in that illness, and was in a position to know more about it than a dozen theoretical experts or talkative neighbors, testified positively that the testator made a " complete recovery " before the date of the will, and all the

circumstances confirm the accuracy of the diagnosis. Against the testimony of Mr. McKenna and Dr. Ayres alone, even if it were not supported as it is by business men and others as to the actual dealings of the testator, the evidence against the will would not be sufficient to sustain a verdict.

The question of undue influence scarcely requires comment. The beneficiary was the testator's only surviving brother; they had lived together in the same house for forty years, including even the year of testator's married life; and they had been in partnership through adversity and through success for more than half that time. Such relations of blood and association are naturally productive of affection and of testamentary remembrance, but they do not warrant the inference of undue influence. The circumstances of the making of the will affirmatively disprove any exertion of undue influence on the part of the beneficiary at that time, and the few trifling acts of assistance or even of direction to the testator as to making change, etc., in the store, fall far short of establishing any continuing influence of the beneficiary which even in his physical absence controlled the mind of the testator: Miller v. Oestrich, 157 Pa. 264.

Decree affirmed at costs of appellant.