## Morgan's Estate.

219        355|
f221       319|

219   355
f227  ²5₀3

*Wills—Probate—Subscribing witness—Testamentary capacity.*

Where a subscribing witness to a codicil knows that he is signing a testamentary paper, sees the testator sign it, and is asked by the testator or by the other witness in testator's presence to sign as a witness, it is not necessary for him to hear the codicil read to the testator, or to know its contents.

Where a will is written by counsel at one time, and a codicil by the attending physician at another time, both from dictation of the testator without aid or interference of any other person, there is a prima facie case in favor of the will and codicil, which can only be overcome by clear, definite, circumstantial and weighty evidence of facts not reconcilable with the possession of testamentary capacity. Opinions of experts, and the usual testimony as to the failings of age, lapses of memory, irritability, etc., are of little weight in such cases.

A will is unnatural in a legal sense only when it is contrary to what the testator from his known views, feelings and intentions would have been expected to make. When it is in accordance with these it is never unnatural, however much it may differ from the ordinary actions of men in similar circumstances.

A will passing over a daughter and leaving the bulk of testator's estate to the daughter's two children, is not to be considered an unnatural one, and evidence of undue influence, where it appears that the testator's object was to prevent his estate from going into the hands or coming under the management of his son-in-law against whom he had a prejudice. In such a case the fact that the prejudice may have been without any just foundation is immaterial. A man's prejudices are a part of his liberty.

Argued Oct. 24, 1907. Appeal, No. 62, Oct. T., 1907, by Jennie M. Lang et al., from decree of O. C. Washington Co., Nov. T., 1905, No. 36, refusing an issue devisavit vel non in Estate of Samuel P. Morgan, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Appeal from register of wills. Before McILVAINE, P. J. The opinion of the Supreme Court states the case.

*Error assigned* was refusal to award an issue devisavit vel non.

*R. H. Jackson*, with him *McIlvaine & Williams*, for appellants.—The execution of the codicil was not proven by the oath of two competent witnesses as required by the Act of April 8, 1833, P. L. 249 : Carson's App., 59 Pa. 493 ; Derr v. Greenawalt, 76 Pa. 239.

When a will is made by one whose mind is controlled by unreasonable prejudice, which no sane mind under the facts would entertain, then it ceases to be a prejudice and becomes an insane delusion under which the mind is laboring, and the will then executed is not the will of the testator, but is the product of the insane delusion : Taylor v. Trich, 165 Pa. 586 ; Thomas v. Carter, 170 Pa. 272.

*T. F. Birch*, for appellees, was not heard.

OPINION BY MR. CHIEF JUSTICE MITCHELL, January 6, 1908:

The first objection of the appellant that the codicil was not legally proved by two witnesses cannot be sustained. The witness McCartney, whose testimony is complained of as insufficient, did not hear the codicil read to the testator, the contents were not known to the witness, nor did he know except by inference that it was a codicil. But it was not necessary that he should have affirmative knowledge on these points. He knew he was there to witness a testamentary paper, he saw the testator sign it and was asked by the testator or by the other witness in testator's presence to sign as a witness. He testified on this point, " The message to me was Mr. Morgan wanted to see me. And you didn't hear the paper read that you signed ? No, sir. And you don't know whether Mr. Morgan heard it read ? I don't know ; I wasn't told. Who asked you to sign it ? I can't be absolutely certain about that, but I think it was both Mr. Morgan and Dr. Stewart. The mention was made of my witnessing the signature as soon as I went into the room, and after Mr. Morgan had affixed his signature ; I can't remember who it was said for me to sign it." The actual signature of the testator and his intention to execute the paper are thus fully shown, and the nature of the paper appears on its face. Certainly in the absence of any conflicting evidence the requirements of the statute were complied with.

The second and principal error alleged is in the finding of

the judge that the evidence of want of testamentary capacity was not sufficient to submit to a jury.

A will was written by counsel in November, 1903, and a codicil by the attending physician on March 22, 1904, both from dictation of the testator without aid or interference of any other person. Under such circumstances a prima facie case is made out, which can only be overcome by clear, definite, circumstantial and weighty evidence of facts not reconcilable with the possession of testamentary capacity. Opinions of experts, and the usual testimony as to the failings of age, lapses of memory, irritability, etc., are of little weight in such cases : Richmond's Estate, 206 Pa. 219 ; Kane's Estate, 206 Pa. 204 ; Draper's Estate, 215 Pa. 314 ; Mulholland's Estate, 217 Pa. 65.

Between the dates of the will and the codicil the testator made several very material changes in the disposition of his estate, and it is argued that this showed such weakness and vacillation of mind as to be strong evidence of want of testamentary capacity. But whatever weight such fact, unexplained, might have in ordinary cases, is obviated here by the plain indication that the impelling motive of the testator was to prevent his estate going into the hands or coming under the management of his son-in-law. He was less concerned as to where it should go than where it should not.

Testator had an only child, a daughter, whom he passed over and gave the bulk of his estate to her two children, and it is argued from this that the will is an unnatural one and evidence of undue influence. But a will is unnatural in a legal sense only when it is contrary to what the testator from his known views, feelings and intentions would have been expected to make. When it is in accordance with such views it is never unnatural, however much it may differ from the ordinary actions of men in similar circumstances. In the present case it was shown that the testator had a prejudice against his son-in-law and that his reason for passing over his daughter was to avoid the probability of the estate coming into the hands or management of her husband. It is conceded that the prejudice was without any just foundation, but just or unjust its existence explains the testator's action and deprives it of all weight as evidence of mental incompetency. As said by

PAXSON, J., in Cauffman v. Long, 82 Pa. 72, quoted by the learned judge below, " a man's prejudices are a part of his liberty." The favoring of grandchildren in preference to children is not in itself so unusual as to need justification.

The learned judge was of opinion that on the evidence a verdict against this will could not be sustained, and in that opinion we concur.

Judgment affirmed.