# McNitt's Estate.

*Wills—Probate—Issue devisavit vel non—Testamentary capacity—Evidence—Scrivener.*

1. An issue devisavit vel non is properly refused when the evidence to establish testamentary incapacity is not of a very positive character as to testator's physical and mental weakness while the evidence to sustain the will is by the scrivener and the two subscribing witnesses who testify positively to the fact that the testator knew what he was doing at the time he signed the paper, that he had knowledge of his personal and real estate, that he possessed sufficient understanding and reason, and expressed his desire as to where he wished his property to go.

*Wills—Probate—Issue devisavit vel non—Undue influence—Evidence.*

2. An issue devisavit vel non on the ground of undue influence will be refused where the most that can be found from the testimony is that there was an opportunity for the exercise of influence.

Argued May 9, 1910. Appeal, No. 271, Jan. T., 1909, by George A. Betzer et al., from decree of O. C. Mifflin Co., May T., 1908, No. 1, refusing issue devisavit vel non in Estate of John L. McNitt, deceased. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

The facts appear in the opinion of the Supreme Court.

*Error assigned* was decree refusing issue devisavit vel non.

*J. W. Gillespie* and *J. C. Houser,* with them *J. Mal. Gillespie,* for appellants, cited as to the burden of proof: Robinson v. Robinson, 203 Pa. 400; Logan's Est., 195

Pa. 282; Harrison's App., 100 Pa. 458; Caldwell v. Anderson, 104 Pa. 199; Cuthbertson's App., 97 Pa. 163; Boyd v. Boyd, 66 Pa. 283; Herster v. Herster, 116 Pa. 612; Reichenbach v. Ruddach, 127 Pa. 564.

Cited as to mental incapacity: McTaggart v. Thompson, 14 Pa. 149; Swails v. White, 149 Pa. 261; Nonnemacher v. Nonnemacher, 159 Pa. 634; Irish v. Smith, 8 S. & R. 573; Pidcock v. Potter, 68 Pa. 342; Shaver v. McCarthy, 110 Pa. 339; Caven v. Agnew, 186 Pa. 314; Burke v. Maxwell, 81 Pa. 139; Reichenbach v. Ruddach, 127 Pa. 564; Knauss's App., 114 Pa. 10; Rambler v. Tryon, 7 S. & R. 90; Yardley v. Cuthbertson, 108 Pa. 395.

*A. Reed Hayes*, with him *L. J. Durbin*, for appellee, cited as to testamentary capacity: Landis v. Landis, 1 Grant, 248; Palmer's Est., 219 Pa. 303; Grubbs v. McDonald, 91 Pa. 236; Caldwell v. Anderson, 104 Pa. 109; Boyd v. Boyd, 66 Pa. 283; Mulholland's Est., 217 Pa. 65; Cauffman v. Long, 82 Pa. 72.

Cited as to undue influence: Yorke's Est., 185 Pa. 61; Wainwright's App., 89 Pa. 220; Caughey v. Bridenbaugh, 208 Pa. 414; Englert v. Englert, 198 Pa. 326; Logan's Est., 195 Pa. 282; Hook's Est., 207 Pa. 203.

OPINION BY MR. JUSTICE MOSCHZISKER, July 1, 1910:

The register of wills refused an issue devisavit vel non to try the validity of the will of John L. McNitt, deceased, and the orphans' court sustained the decision. The appellants contend that the court below erred in refusing to submit to a jury (1) the question of the testamentary capacity of the testator; (2) the question of the alleged undue influence over the testator of one J. H. Taylor, the husband of the appellee, the sole devisee under the will.

Lizzie Taylor, to whom the testator left his estate amounting to $11,334.87, is the daughter of one of his deceased brothers, and the appellants are four children

of a deceased sister. When the grandfather of these parties died he left him surviving four children in whom his estate vested, the testator, the mother of the appellants, the father of the appellee, and one other son, James. After some litigation the mother of the appellants secured her share of the property amounting to $3,600, which was paid to her in 1865 by the testator and his brother James. This left the property vested one-fourth in the father of Lizzie Taylor and the balance in the testator and his brother James. Upon the death of James the three-fourths became vested in the testator, and upon death of her father the one-fourth became vested in Lizzie Taylor as his only heir, but she permitted the testator the sole use and enjoyment of the homestead property until his decease.

Considering all the circumstances the will in question was a natural one; but the point is, Was there error in not submitting the questions involved to a jury? We have gone over the record with care, and we cannot say that the court below was wrong in refusing an issue. The testimony all shows that the testator was in a physically enfeebled state at the time of the making of the will, and there is certain evidence which standing alone would justify a finding that his mind was in a consequent enfeebl condition at times during the day of the execution of the will; but taking the testimony as a whole we cannot say that the weight of the evidence was sufficient to sustain the contention of the appellants as to the lack of testamentary capacity when the will was signed. "Testamentary capacity is the normal condition of one of full age, and the affirmative is with him who undertakes to call it in question, and this affirmative must be established not in a doubtful but in a positive manner:" Grubbs v. McDonald, 91 Pa. 236. "The test of capacity is, that the testator's mind and memory were sufficiently sound to enable him to know and understand the business in which he was engaged at the time he executed his will. Weakness alone will not invalidate

a will, if there be mind and memory enough to understand the subject in hand and to direct the disposition of the property intelligently:" Thompson v. Kyner, 65 Pa. 368. Even though the testator may have had sinking spells before and after the making of his will, the uncontradicted testimony of the scrivener who drew the document shows that at the time the will was executed the testator had an intelligent knowledge of the act he was engaged in, of the property he possessed, of his relatives, and of the disposition that he desired to make of his estate; and this is all that is necessary. The rule is that where the trial judge feels on a review of the evidence that he would be obliged to set aside a verdict against the will, it is his duty to refuse to submit the issues to the jury. In this case the trial judge states: "The evidence to establish the reasons alleged is confined to the housekeeper and three or four witnesses whose evidence is not of a very positive character. While the evidence to sustain the will is by the scrivener and the two subscribing witnesses who testify positively to the fact that the testator knew what he was doing and that he had knowledge of his personal and real estate and that he possessed sufficient understanding and reason, and expressed his desire as to where he wished his property to go. In short the evidence establishes the essentials necessary for one to possess in order to make a valid will. If the evidence, which is before us, and which we have perused, was before a jury we would be compelled to direct a verdict in favor of the will, and we are, therefore, bound to sustain the finding of the register and refuse an issue."

Undue influence to avoid a will must be of a kind that subjugates the mind of the testator to that of the person seeking to control it, so as to destroy the free agency of the testator at the time the will is made: Wilson v. Mitchell, 101 Pa. 495; Herster v. Herster, 122 Pa. 239; Caughey v. Bridenbaugh, 208 Pa. 414. On this branch of the case it is enough to say that the testimony is wholly

insufficient to support a finding that J. H. Taylor exercised any influence over the mind of the testator at the time of the making of the will. The most that can be found from the testimony is that there was an opportunity for the exercise of influence, and this we held insufficient to submit to a jury in Tyson's Est., 223 Pa. 596.

The assignments of error are overruled, and the order of the orphans' court refusing an issue is affirmed at the cost of the appellants.