## Doster's Estate.

*Wills — Probate — Issue devisavit vel non — Testamentary capacity—Insane delusion—Refusal of issue—Discretion of chancellor.*

1. An insane delusion is a belief in the existence of something that does not exist, and of which there is no evidence.

2. The Supreme Court will not reverse a decree of the orphans' court refusing an application for an issue devisavit vel non based on averments that testator was under a delusion which affected his testamentary capacity, if it appears that there was no abuse of discretion in the action of the hearing judge sitting as a chancellor.

Argued March 8, 1921. Appeal, No. 156, Jan. T., 1921, by Marguerite Kight, from decree of O. C. Northampton Co., refusing issue devisavit vel non, in estate of William E. Doster, deceased. Before FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ. Affirmed.

Appeal from register of wills.  Before STEWART, P. J.

From the record it appeared that the contestant claimed that decedent, at the time he made his will, was under the insane delusion that contestant was not his daughter.

The opinion of the Supreme Court states the facts.

The court dismissed the appeal.  17 Northampton Co. Rep. 255.  Marguerite Kight, contestant, appealed.

*Error assigned,* was, inter alia, decree, quoting it.

*Robert S. Taylor,* for appellant.—Contestant alleges her father, testator, was suffering from a delusion that contestant was not his daughter at the time of making his will, which delusion influenced him in cutting her off from participating in the distribution of his very large estate with but fifty cents.  That such a delusion will invalidate a will has been held by many Pennsylvania decisions: Alexander's Est., 246 Pa. 58; Bennett's Est., 201 Pa. 485; Fleming's Est., 265 Pa. 399; Sharpless's Est., 134 Pa. 250; Phillips's Est., 244 Pa. 35; Royer's Est., 6 Pa. Superior Ct. 401; Seiler's Est., 14 Pa. Superior Ct. 504.

*Asher Seip* and *George R. Booth,* for appellees, cited: Taylor v. Tritch, 165 Pa. 586; Morgan's Est., 219 Pa. 355; Keller v. Lawson, 261 Pa. 489; Fleming's Est., 265 Pa. 399.

OPINION BY MR. JUSTICE KEPHART, May 26, 1921:

This case comes before us from an order refusing to direct an issue to contest the will of William E. Doster. General Doster was a man of high intellectual attainments, a prominent lawyer for more than fifty years, and a veteran of the Civil War, serving his country with distinction.  He died at the age of eighty-three, and up to his last day had a large, varied and lucrative practice,

which required his constant care and personal supervision.

The ground upon which an issue devisavit vel non was asked was that testator was under a delusion at the time of making his will, and it so far influenced him that he refused to provide for his daughter, contestant below and appellant here.

Delusion is defined as "a false belief, originating spontaneously in the imagination, without foundation either in fact or evidence, of the falsity of which the person affected cannot be convinced by argument or proof": 28 Am. & Eng. Enc. of L. 80. Chief Justice COCKBURN of England says: "If, without evidence of any kind, he imagines or conceives something to exist which does not in fact exist, and which no rational person would, in the absence of evidence, believe to exist, then it is manifest that the only way in which his unnatural belief can be accounted for is that it is the product of mental disorder. Delusions of this kind can be accounted for upon no reasonable theory except that they are creations of some derangement of his mind, in which they originated": quoted in Taylor v. Trich, 165 Pa. 586, 592. A delusion is "a belief in the existence of something that does not exist": Taylor's Medical Jurisprudence, 629. These definitions show two things: 1st, a delusion (i. e. an insane delusion) is a positive or affirmative mental act—not a mere negation or denial; 2d, the fact or thing conceived or imagined does not exist and there is no evidence of such mental image or conception or ground therefor.

The learned president judge who heard this case was most generous in the reception of testimony, affording the contestant every opportunity possible to present evidence that might in any way sustain her position. Gen. Doster had a strong mind and remarkable physical vigor. He personally supervised the management of his ten farms, a banking institution in Lehigh Valley and a large law practice. As correctly stated by the court below, contestant's evidence to show he was suffering

under a delusion is connected with a most unfortunate
visit of his daughter and her family to him on July 17,
1918, uninvited, unannounced, as he was entertaining a
guest in his home. To clearly understand the case it is
necessary to read all of the evidence. We have done so.
To review it here would serve no useful purpose. The
court below was clearly right when it found that, on the
25th of July, 1918 (when decedent wrote his will), he
had a sound, disposing mind, memory and understand-
ing, and the will admitted to probate was the last will
and testament of decedent. We may observe, contest-
ant's theory was, the references by Gen. Doster should
be taken in a literal sense rather than in a broad way as
the court below construed it; that is, relating solely to
unfilial conduct. The action of testator may be viewed
by some as severe, notwithstanding all the events of his
daughter's life. He was known to have an arbitrary
manner; a short, curt, military way of speaking; given
at times to anger and bitter recollections. But we did
not write the will of Gen. Doster, nor can we, from this
record, rewrite it. If his treatment of his daughter is
to be considered cruel the person who must answer for
it is the General. For, out of his large circle of acquaint-
ances in that community, not one of his business or pro-
fessional associates was called to testify to want of tes-
tamentary capacity.

We are mindful of the fact that testator took his
daughter, then a mere child of twelve, from her mother,
sent her to Europe to be educated, visiting her but
twice during these years, and leaving her in this forma-
tive period of life among strangers to receive the sub-
stitute of a mother's care. That she acquired cer-
tain habits under those conditions is not surpris-
ing. Nor are we impressed with the idea that there was
lack of filial devotion and respect, as urged by ap-
pellee. It is not astonishing that, when she came home
and found her father married to her school chum, many,
many years his junior, she left to again join her mother;

and of course she could not be criticised for the conduct of her brother in marrying his father's second wife. She resented her father's remarriage and so expressed herself. If their relations during later years were not as pleasant as he would have liked, it is not clear she was entirely to blame; her early education and environment must be taken into consideration. If the daughter drank occasionally during her married life, it was one of the habits she says she learned in Europe; and if her life was wrecked, and as a result she came to her father, under the circumstances detailed in the evidence, when we clearly view the entire scene, while it was unfortunate, she was not altogether responsible for it. But these circumstances,—under the law as it has been construed by this court, and held more stringently in our later cases,—could not operate to discard the will of Gen. Doster.

The applicable rules of law have been stated recently by this court in Tetlow's Estate, 269 Pa. 486, in an opinion by the Chief Justice. The reason for the rule there stated is well founded. To modify it would, through grievances, fanciful or real, cause fifty per cent of the wills written to be made the subject of judicial contest, and ofttimes the fruitful subject of perjured testimony. There is scarcely a will that satisfies everybody. It is better to adhere to the rule laid down by this court in the opinion of the Chief Justice, which, concretely expressed, is that there must be an abuse of discretion by the hearing judge who sits as a chancellor when an issue is refused, before this court will reverse.

The decree of the court below is affirmed at the cost of appellant.