## Heyburn Estate.

*Decedent's estate—Wills—Issue devisavit vel non—Evidence— Insufficiency.*

An issue devisavit vel non is properly refused, where the reasons advanced are lack of testamentary capacity, undue influence, and failure of execution, and there is not sufficient evidence to support any of the allegations in the petition.

Argued November 20, 1924.    Appeal, No. 185, Oct. T., 1924, by contestants, from decree of O. C. Delaware Co., Sept. T., 1922, No. 14, refusing an issue devisavit vel non in the Estate of Anna Louisa Heyburn.    Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.    Affirmed.

Petition for an issue devisavit vel non.    Before HANNUM, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the petition.    Contestants appealed.

*Error assigned* was the order of the court.

*William C. Alexander,* and with him *W. Roger Fronefield,* for appellants.

*A. B. Geary,* of *Geary and Rankin,* for appellee.

OPINION BY LINN, J., February 27, 1925:

This appeal is from the refusal of an issue devisavit vel non.    Three reasons for the granting of an issue were

alleged in the petition: (1) lack of testamentary capacity; (2) undue influence; and (3) somewhat inconsistently, it was contended that decedent never signed the will, a point depending on whether the person who gave the testamentary instructions and executed the will was the decedent, or some substituted person.

Miss Heyburn died August 24, 1922, leaving what was contended to be her will executed on October 3, 1913, when she was about 74 years old; it was admitted to probate September 16, 1922, and letters testamentary were issued. Three nephews then appealed from the probate and filed the petition for an issue and for the revocation of the letters. She left surviving a number of nephews and nieces and children of deceased nephews and nieces.

1. She was very deaf. Witnesses on behalf of contestants testified that about the time the will was made, her deafness prevented some of them from making her understand anything, while others could do so only with great difficulty. Two of them however, testified that about then, they borrowed money from her; that she insisted upon having their promissory notes from time to time as she made loans; that she fixed the rate of interest, one of them saying, "she knew to charge me more than anybody else"; that she said she "wanted her money put out in the hands of honest people." She insisted on loans for a year instead of a less period, and received the interest and signed appropriate receipts. A nephew, a bank cashier by occupation, was called by contestants, and testified that he saw her three or four times in 1912 and 1913 and that one "could make her understand" "if you talked loud enough and long enough." The record contains nothing that could possibly be submitted to a jury to support the first ground, lack of testamentary capacity.

2. The charge of undue influence is not presented in the brief, and we find it unsupported in the evidence. Contestants produced testimony that some dispute developed during the administration of the estate of Miss

Heyburn's brother, of which their father was administrator, apparently resulting in some friction with her, and that her sister and the sister's son (one of the residuary legatees and executor of decedent's will) then said they would prevent contestants sharing in Miss Heyburn's estate; as both these persons died before the hearing, it was not denied, but on this record, the threat if made, is insufficient to establish the charge of undue influence.

3. Decedent left her nieces and a nephew with whom she resided, on September 6th, to make a customary visit with another nephew, who is alleged to have unduly influenced the making of this will. It was executed on October 3, 1913. A well-known and reputable lawyer—whose integrity is conceded by the attorneys for appellants—was asked by this nephew to come to his house in the country, and there was introduced to Miss Heyburn by the nephew or his wife; he had not seen Miss Heyburn before. He was left alone with her, when, as he testified, she instructed him in detail concerning her testamentary wishes; in her presence he made notes accordingly. She heard him with the aid of her speaking tube. He said: "I talked with her quite a while and discussed phases of what she wanted to embody in her will. She seemed to make known just what she wanted." He returned to his office in Chester and drew her will in accordance with her instructions. Several days later, with his stenographer, he called on testatrix and, none of her relatives being present, he read the will to her; "I asked her if she understood as I was going along; she said 'yes.'" The evidence of his stenographer corroborates him concerning what occurred at this time; both these witnesses, at the request of testatrix, saw her execute the will, and signed as subscribing witnesses. There is really no evidence that the person who gave testamentary instructions and later executed the will was not Miss Heyburn, the decedent.

On a record so destitute of anything raising a substantial dispute, the award of an issue could not be sustained: Snyder's Estate, 279 Pa. 63, 66, and cases there cited.

Appeal dismissed.