## Sturgeon Will.

76

Argued March 27, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Joseph W. Ray, Jr.,* with him *Herman M. Buck, Ray, Coldren & Buck* and *W. Brown Higbee,* for appellant.

*Dean D. Sturgis,* with him *Wade K. Newell,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 26, 1947:

This is an appeal from a decree of an orphans' court refusing an issue *devisavit vel non*. The record was certified to the orphans' court by the register of wills under sec. 18 of the Register of Wills Act of June 7, 1917, P. L. 415, 20 PS 1981. Contestant charged that decedent lacked testamentary capacity and that the will was obtained by undue influence. No testimony was produced as to undue influence and this charge is not pressed. The sole question is whether the testimony relating to testamentary incapacity was sufficient in quality and quantity to raise a substantial dispute of fact requiring the grant of an issue: *De Laurentiis's Estate*, 323 Pa. 70, 186 A. 359; *Lare Will*, 352 Pa. 323, 42 A. 2d 801. The court below held the evidence was insufficient and refused the issue. The appeal followed.

Katherine B. Sturgeon, decedent, who lived alone, died on June 22, 1946, unmarried, at the age of 81 years. Surviving as her sole next of kin was a brother, Dr. John D. Sturgeon, contestant, who was then 92 years of age. All of decedent's other brothers and sisters predeceased her leaving no issue. The widow of her deceased brother Daniel still survives. The contestant, Dr. John D. Sturgeon, has four living children: William, John, Bailey and George. One son, Robert, predeceased his aunt (the decedent) leaving a widow and two children surviving. Decedent's estate consists of real and personal property, the amount of which, while substantial, does not appear in the record. The will of decedent dated May 26, 1945, was presented for probate, against which a caveat was filed, and the record certified to the orphans' court as above recited.

Decedent devised and bequeathed her residence, with furnishings, books and wearing apparel, to her nephew Bailey and his wife Dorothy as tenants by the entirety. The residue was devised and bequeathed to a trust com-

pany, in trust, to pay one-third of the income to her nephew William for life; one-third of the income to Dorothy, wife of her nephew Bailey for life; and the remaining one-third of the income to Bailey and Daniel, minor sons of her nephew Bailey, until the younger of them should have arrived at the age of thirty years. Decedent provided that upon the death of William one-third of the corpus should pass to his children Charles and Joseph. Upon the death of Dorothy, wife of the nephew Bailey, one-third of the corpus was devised and bequeathed to her children, Bailey and Daniel. The remaining one-third of the corpus was devised and bequeathed to her grandnephews, Bailey and Daniel, children of her nephew, Bailey, when the younger of the two should have arrived at the age of 30 years.

It is thus to be observed that the will omits from those who might be regarded as natural objects of decedent's bounty her brother, Dr. Sturgeon (contestant), her sister-in-law, Laura, widow of her brother Daniel, and her nephews, John and George (children of her brother, Dr. Sturgeon), and her two grandnephews or nieces, children of her deceased nephew Robert.

The will was prepared by a highly reputable and experienced member of the bar, who had been acquainted with decedent for fifty years. He testified that decedent called him on the telephone about the middle of May, 1945, and made an appointment for her to come to his office. Pursuant to the appointment, decedent came into the lawyer's private office, unaccompanied, and directed him to prepare her will. She was questioned concerning the nature and extent of her estate and her family relations, and gave accurate and comprehensive answers to all inquiries. She gave instructions concerning the disposition of her estate. She stated that while her relations with her brother (contestant) had been pleasant, he possessed property and that it would not be necessary for her to give him any part of her estate. She stated

that her relations with the nephew, Dr. John D. Sturgeon, had been unpleasant, that he had property and she did not choose to make him a beneficiary; also that she feared that this nephew might inspire his father to contest the will. She discussed with the lawyer her relations with the other members of the family. The lawyer inquired concerning her acquisition to the title to her Kensington Street property, to which she accurately replied. Her answers were verified by the public record and the chain of title was inserted in the will. Decedent came to the lawyer's office at least on two occasions before the will was executed and discussed on each occasion the nature of her property and the persons to whom she desired to bequeath it. On each occasion the decedent was interviewed by the attorney in his private office and she was unaccompanied. The lawyer dictated the will to his secretary and a carbon copy was mailed to decedent on May 24, 1945. On May 26, 1945, decedent came into the lawyer's office, unaccompanied, and the lawyer in her presence and in the presence of his secretary read the entire document to her. She expressed her satisfaction with it. Decedent then signed the will and at her request the lawyer and his secretary witnessed it, in the presence of decedent and of each other. Both witnesses testified that in their opinion decedent possessed testamentary capacity.

The testimony discloses that decedent had always intelligently conducted her business affairs. She bought and sold securities; she contracted for alterations and repairs to her home; she dealt with lawyers respecting her interest in real estate and with mining rights; three tellers of her bank testified as to her activities in her banking matters; her sister-in-law, the widow of the brother Daniel, testified as to her management of real estate in which they were both interested; neighbors and a domestic also testified. All expressed their opinion that decedent possessed testamentary capacity. The

bank records revealed that decedent kept two accounts, one a "House account" and the other a "Personal account". From April 29, 1944, to October 25, 1945, decedent made 42 separate deposits in her house account and 41 in her personal account. Numerous checks were drawn by decedent against her accounts, signed by her, and with two exceptions, were drawn by decedent in her own handwriting. Among the checks were those for payment of taxes and the purchase of bonds.

It is conceded that the decedent was old and suffering from infirmities of advancing age. It does not appear, however, that she was otherwise ill.

Contestant offered the testimony of his son, Dr. John D. Sturgeon, Jr., a practicing physician, that of his son William (a beneficiary under the will), and an employe of the bank, all of whom testified that in their opinion decedent lacked testamentary capacity. Three physicians were called. Dr. Van Gilder, the attending physician at the death, testified that decedent suffered from senile psychosis, but that she knew what property she possessed, knew her relatives and that in his opinion she was capable of transacting business. Dr. Mhley, who treated decedent twice in September, 1944, and January, 1945, was of the opinion that decedent was mentally incompetent. Dr. McHugh operated on decedent in 1940 for a serious bowel condition but did not see her after March, 1942. He testified that from his observation his opinion was that in 1945 "decedent's judgment would not be good". A grandniece, a grandnephew and a bank cashier testified that in their opinion decedent did not possess testamentary capacity.

President Judge MATTHEWS made a careful and thorough analysis of the testimony. His findings of fact are amply supported by the testimony.

The test concerning the propriety of granting an issue d. v. n. by an orphans' court is whether the dispute is *substantial*. A mere *conflict* in the testimony does not

make the dispute a substantial one: *Guarantee Trust & Safe Deposit Co., Guardian, v. Heidenreich et al.,* 290 Pa. 249, 252, 38 A. 764. There can be no substantial dispute where a verdict of a jury against the will would have to be set aside as judicially untenable: *De Laurentiis's Estate,* 323 Pa. 70, 186 A. 359. See also: *Lare Will,* 352 Pa. 323, 331, et seq., 42 A. 2d 801, and the cases therein cited.

A decedent possesses testamentary capacity if he has an intelligent knowledge regarding those who are the natural objects of his bounty, of what his estate consists, and of what he desires done with it, even though his memory has been impaired by age or disease: *Wilson v. Mitchell,* 101 Pa. 495; *McNitt's Estate,* 229 Pa. 71, 78 A. 32; *Tetlow's Estate,* 269 Pa. 486, 112 A. 758; *Snyder's Estate,* 279 Pa. 63, 123 A. 663; *Olshefski's Estate,* 337 Pa. 420, 11 A. 2d 487; *Ash Will,* 351 Pa. 317, 41 A. 2d 620.

Less capacity is needed to make a valid will than is sufficient in most cases to transact ordinary business: *Guarantee Trust & Safe Dep. Co., Exr., v. Waller,* 240 Pa. 575, 88 A. 13; *Kustus v. Hager,* 269 Pa. 103, 112 A. 45; *Snyder's Estate,* supra; *Novicki v. O'Mara,* 280 Pa. 411, 124 A. 672; *Lawrence's Estate,* 286 Pa. 58, 132 A. 786; *Guarantee Trust & Safe Deposit Co., Guardian, v. Heidenreich et al.,* supra; *Phillips's Estate,* 299 Pa. 415, 149 A. 719; *Aggas v. Munnell,* 302 Pa. 78, 152 A. 840; *Olshefski's Estate,* supra.

Transaction of business is evidence of testamentary capacity: *Smith's Estate,* 250 Pa. 67, 95 A. 338; *Gongaware v. Donehoo,* 255 Pa. 502, 100 A. 264; *Doster's Estate,* 271 Pa. 68, 113 A. 831; *Betz's Estate,* 62 Pa. Superior Ct. 273; *Waldron Estate,* 275 Pa. 258, 119 A. 129; *Heyburn Estate,* 85 Pa. Superior Ct. 230.

Testamentary capacity is presumed. After proof of execution by two witnesses the burden of proof as to incapacity is on contestant: *Rees v. Stille,* 38 Pa. 138;

*Werstler v. Custer,* 46 Pa. 502; *Messner v. Elliott,* 184 Pa. 41, 39 A. 46; *Palmer's Estate,* 219 Pa. 303, 68 A. 710; *McNitt's Estate,* supra; *Lawrence's Estate,* supra; *Wertheimer's Estate,* 286 Pa. 155, 133 A. 144; *Olshefski's Estate,* supra; *Cressman Estate,* 346 Pa. 400, 31 A. 2d 109; *Lauer Will,* 351 Pa. 438, 41 A. 2d 552.

Strong testimony is required to overcome evidence of competency given by the scrivener, subscribing witnesses and attending physician: *Kane's Estate,* 206 Pa. 204, 55 A. 917; *Richmond's Estate,* 206 Pa. 219, 55 A. 970; *McNitt's Estate,* supra; *Leisey's Estate,* 280 Pa. 533, 124 A. 754; *Phillips's Estate,* 299 Pa. 415, 149 A. 719; *Aggas v. Munnell,* supra; *Weber's Estate,* 334 Pa. 216, 5 A. 2d 550.

The testimony of medical experts without direct knowledge of the facts is of little weight as against the direct evidence of disinterested witnesses: *Kane's Estate,* supra; *Draper's Estate,* 215 Pa. 314, 64 A. 520; *Morgan's Estate,* 219 Pa. 355, 68 A. 953; *Graham's Estate,* 225 Pa. 314, 74 A. 169; *Guarantee Trust & Safe Dep. Co., Exr., v. Waller,* supra; *Snyder's Estate,* supra; *Wertheimer's Estate,* supra; *Guarantee Trust & Safe Deposit Co., Guardian, v. Heidenreich et al.,* supra; *Phillips's Estate,* supra; *Cookson's Estate,* 325 Pa. 81, 188 A. 904; *Mohler's Estate,* 343 Pa. 299, 22 A. 2d 680.

Opinion evidence as to incapacity is of no great force in the face of an intelligent disposition by the will: *Aggas v. Munnell,* supra.

The evidence, weighed and considered in connection with the foregoing principles, clearly establishes that any verdict of a jury against the validity of this will would have to be set aside because contrary to the weight of the evidence. No *substantial* dispute is therefore presented.

The decree of the court below is affirmed at the cost of contestant.