# Kustus *v.* Hager et al., Appellants.

*Wills—Probate — Testamentary capacity — Undue influence —*
*Presumption—Meretricious relations—Evidence.*

1. There is no essential inconsistency between a finding of testamentary capacity, and a finding that testator's mind was to some extent weakened by his excesses.

2. Ordinarily a presumption of undue influence arises where a testator's mind is shown to have become weak, and his estate or a large part thereof, is given to one with whom he is having meretricious relations.

3. In order to avoid the will of one possessing testamentary capacity, the undue influence alleged, whether arising from meretricious relations or otherwise, must be operative upon and control the mind of testator at the time and in the very act of making his will.

4. While ordinarily the question whether it did then operate upon and control the mind of testator would be a matter for the jury to decide, nevertheless, if it is clear a verdict against the will could not conscientiously be sustained, it is the duty of the court to so rule as a matter of law.

5. Generally speaking, less capacity is required to make a valid will than to transact ordinary business.

6. Less business judgment is required in making a valid will than in making a gift inter vivos, for in the former case testator's actual and possible needs do not have to be considered.

7. Where it clearly appears testator performed every business act properly, a presumption arises that he is capable of making a will.

8. Where testator determines to give the whole of his estate to one person, a competency to distribute is not the test of his mental capacity.

9. A will is not unnatural which gives a large portion or all of testator's estate to one who has been kind and helpful to him, especially if those who would take under the intestate laws have not themselves been kind and helpful.

Argued October 14, 1920.    Appeal, No. 145, Oct. T., 1920, by defendants, from order of C. P. Allegheny Co., Jan. T., 1920, No. 735, entering judgment for plaintiff n. o. v. in case of Louise Kustus v. Louis Hager et al.

Before BROWN, C. J., MOSCHZISKER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Issue devisavit vel non to determine testamentary capacity of Henry T. Hager, deceased. Before STONE, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for defendants upon which judgment was entered for plaintiff n. o. v. Defendants, who were the contestants, appealed.

*Error assigned* was above judgment, quoting record.

*W. H. Coleman,* with him *O. K. Eaton,* for appellants, cited: Dean v. Negley, 41 Pa. 312; Snyder v. Erwin, 229 Pa. 644; Wiles' Est., 247 Pa. 340; Watmough's Est., 258 Pa. 22; Rudy v. Ulrich, 69 Pa. 177; Wainright's App., 89 Pa. 220; Johnson's Est., 159 Pa. 630; Lewis's Est., 210 Pa. 599; Allshouse v. Kelly, 219 Pa. 652; Chidester's Est., 227 Pa. 560; Canfield v. Barnes, 234 Pa. 528; Cressman's Est., 246 Pa. 291; Ewart's Est., 246 Pa. 579; Main v. Ryder, 84 Pa. 217; Reichenbach v. Ruddach, 127 Pa. 564.

*George J. Shaffer,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, December 31, 1920:

Henry T. Hager died March 9, 1919, at the age of 51 years, leaving a will dated April 19, 1918, by which he gave his entire estate, of between $20,000 and $22,000, to Louise Kustus, the plaintiff in this case, "in consideration of her friendship and faithful service to me." At the time of his death his nearest relatives were a brother, a sister and four children of a deceased sister, all of whom are defendants here. The register of wills admitted the paper to probate, but on appeal to the orphans' court a precept was issued to the court of common pleas to determine: "(1st) Did testator lack testamentary capacity at the time the will was executed? and (2nd) Was the testator unduly influenced by Louise

Kustus, or by any one in her behalf, to make her sole beneficiary?" The jury found he had testamentary capacity but was unduly influenced by plaintiff to make the will. On her motion for judgment non obstante veredicto the court below set aside the verdict so far as related to undue influencé, and entered final judgment for plaintiff on both issues; whereupon defendants prosecuted this appeal.

The only assignment of error challenges the entry of judgment non obstante veredicto, and hence his testamentary capacity must be treated as established. Appellants strongly urge, however, that there was ample evidence from which the jury could have found testator's mind had become weak by reason of excessive drinking and other bad habits; that this finding was not inconsistent with testamentary capacity; and that meretricious relations had existed for some time between him and plaintiff. They therefore insisted that a presumption of undue influence arose from which the jury were justified in finding its existence, and hence the court below erred in setting aside the verdict on this point. Nothing would be gained by reviewing at length the evidence in regard to these contentions; suffice it to say we agree with appellants that there was testimony from which the jury could have found those facts, that therefrom the presumption claimed ordinarily does arise, and that there is no essential inconsistency between the findings of testamentary capacity and a mind to some extent weakened by excesses. It by no means follows, however, that undue influence is a necessary conclusion from these admissions, or even that they compel the leaving of this question to a jury. There still remains the inquiry whether or not the influence of the relation stated controlled the mind of testator at the time and in the very act of making his will: Trost v. Dingler 118 Pa. 259; Englert v. Englert, 198 Pa. 326.

Where, as here, the determination of the issue thus raised depends upon inferences drawn from certain

facts admitted or proved, and not upon actual proof of the ultimate fact sought to be established, it may, in this class of cases, be wholly overthrown by other facts not inconsistent with those really proved. The inquiry being as to testator's state of mind at the time of making his will—a matter difficult of satisfactory ascertainment by either court or jury— it must frequently be left to the determination of the latter; but if, upon a careful review of all the evidence, it is clear to the judicial mind that a verdict establishing undue influence operating on the mind in the very act of making the will could not conscientiously be sustained, it is the duty of the court to withdraw this matter from the jury's consideration, or on a motion for judgment non obstante veredicto to enter such judgment as the law requires (Phillips's Est., 244 Pa. 35; Keller v. Lawson, 261 Pa. 489) ; and this brings us to a review of the evidence bearing upon this vital point.

Assuming testator's mind was not as strong as it had been in earlier years, the extent of its impairment was still a matter of great importance, and, regarding this, much of the testimony produced by contestants is opinion evidence of the most unsatisfactory kind. Some of those who are now most positive he had been incapable of transacting business for a number of years, did not then hesitate to loan him money and thereafter collect it. Others positive as to his inability to intelligently transact business, are at least equally sure their opinion on this point would be unchanged though it were shown he always intelligently transacted it. One was certain testator was so far gone, mentally and physically, he could not even write his name unless the pen was strapped to his finger, yet was unaffected by the fact that without such aid he constantly wrote and signed leases, checks, etc., up to the time of his death. One of the contestants loaned him $380, took from him a judgment note therefor and afterwards, to his great annoyance, entered it up and collected it through counsel, though

all this time, according to her testimony, he was not "able to intelligently transact any business or know what he was doing." Another contestant, for whom testator was trustee, alleged the latter had not accounted for the moneys collected in the trust estate, and, though now insisting he was not then and had not for a long time been "able to intelligently sign any paper or transact any business," nevertheless took from him, in settlement of the amounts claimed to be due, a deed acknowledged and delivered at the same time and place as the will was executed, then and there signing and delivering to testator a release of all claims, and, strange to say, now asserts that testator got the best of contestant in that bargain.

On the other hand a careful scrutiny of the evidence fails to disclose that testator ever performed any unwise business act. He leased the stores and rooms in the buildings owned by him, collected the rents and wrote the receipts therefor, deposited them in his bank account and drew the money out as he needed it, arranged for repairs necessary to be made to the building, borrowed money, gave proper obligations therefor, paid them in due course, made the necessary purchases for his personal use, and generally did everything which a man, situated as he was, would have done under like circumstances. In considering whether or not testator knew and understood what he was doing when he made his will, we must start, therefore, not only with the fact that he had mental capacity, but also that whatever weakness of mind existed was not shown to have resulted in any foolish or unbusinesslike act; and this is an important consideration, for "as a general proposition less capacity is sufficient to make a valid will than to transact ordinary business": Thompson v. Kyner, 65 Pa. 368; Guarantee Trust and Safe Deposit Co. v. Waller, 240 Pa. 575.

So, too, in considering the question of undue influence, assuming a meretricious relation existed between

plaintiff and decedent, which she denies but the jury found, we must be careful to give to it only the weight which properly flows therefrom and from a mind of the strength above specified. The facts relative to this question are not disputed. Prior to 1910 testator had lived with his mother. In that year she died and thereafter he was without a companion and practically without friends. From then his excessive drinking and other bad habits, if any, either began or greatly increased. So far as this record shows, none of contestants ever thereafter did anything for him—unless the loan above referred to be deemed an exception—and he frequently complained of their neglect and unkindness. One sister living near by had not seen him for six years. Others of the contestants visited him from time to time but did nothing for him. It is, perhaps, not unnatural, in view of the results following his excessive drinking, that they would not desire him as a guest in their homes; though, so far as appears, they never forgave him once, much less the "seventy times seven" enjoined upon them: St. Matthew 18:22. On the other hand, plaintiff—after she and her husband became acquainted with testator—not only took pity on his loneliness and visited and dined with him, but also carried to him, from her home at a distance, dainties cooked by herself; nursed him during his illness, she and her husband giving up their own home and temporarily living with him until he recovered; loaned him money when he needed it; at his request advanced the expenses of altering his property; kept his apartments in order; when he was ill or suffering from excessive drinking, cleaned him and took care of him exactly as a mother or a wife would have done; and, finally, after the will was made, at his request she and her husband went to live in the same building with him. These facts are not denied, and if it be said her influence over him thereby became disproportionately great as compared with that of his contesting relatives, it need only be added the disproportion was due to her

kindness and their neglect. Her conduct, therefore, justified the statement in his will, that what he did was "in consideration of her friendship and faithful service" to him, and made the will a most natural one: Morgan's Est., 219 Pa. 355.

In the light of his condition of mind, and of her kindness to and contestants' neglect of him, we must consider the occurrences when the will was executed. For this purpose testator and plaintiff went to his lawyer's office, at a time arranged between him and the lawyer. They traveled there in a trolley, sitting on opposite sides of the car. Next to testator was a friend of his to whom he stated he intended to make a will in plaintiff's favor. Arriving at the lawyer's office, she was left in the waiting room and he and his lawyer talked over the matter of the will in the latter's private office, testator stating of what his estate consisted and that he intended to leave it to plaintiff "because she was the only disinterested friend that he had." Having heard of testator's drinking habits, the lawyer called in his own brother, also a lawyer, from an adjoining room, so that both might be satisfied as to testator's condition. At that time he was sober and had not been drinking for about sixty days, and they both testified he was fully competent to make a will. Plaintiff was then called into the room to give her exact name, and, upon being told what testator was doing, objected thereto, and said all she desired was to be paid the money she had loaned or expended, and for the services she had rendered, and that the balance of his estate should be given to his relatives. To this, however, he would not consent, saying: "This is my business and I will do it in my own way." His counsel then dictated the will to the stenographer by whom it was typewritten, it was read by testator, acknowledged to be his will, and he requested the two lawyers and the stenographer to witness it, all in plaintiff's absence.

The will itself is brief and easily understood, and did not require great business ability either in determining

to make it, or in comprehending it when made. It simply gave his estate to plaintiff and appointed his counsel as executor. In making such a will testator did not have to decide whether or not he would give his estate to those dependent on him or to relatives who were natural objects of his bounty, for there were none such. He did not have to decide between those who had been kind to him in his time of need, for plaintiff was the only one who had. He did not have to consider how he would divide up his estate, for no question of division arose. He needed less business judgment in making the will than would have been required in making a gift inter vivos of a sum far less than the amount of his estate, for his own actual and possible needs did not have to be taken into account. It is this status, and not the ordinary situation when making a will, which must be taken into consideration in determining whether he knew and understood what he was doing: Stevenson v. Stevenson, 33 Pa. 469. From then until his death the will remained in the possession of his counsel, but testator clearly remembered its contents, and told a number of his friends he had made a will giving his property to plaintiff.

We, therefore, have the case of a man of testamentary capacity, making a will under the advice and with the assistance of his counsel and in the absence of his beneficiary, who was the only friend in need he had during the later years of his life; and though there is evidence of some weakness of mind it is not shown to have affected any business matter, and certainly sufficient strength remained for him to fully comprehend what he was doing. Under such circumstances, even assuming meretricious relations to have existed between testator and plaintiff, no chancellor would permit a will to be set aside on the ground of undue influence: Wainwright's App., 89 Pa. 225; Johnson's Est., 159 Pa. 630; Kane's Est., 206 Pa. 204; Allshouse v. Kelly, 219 Pa. 652; Watmough's Est., 258 Pa. 22. It may be a work of supererogation to cite

from these authorities, but one may quote the following as exactly fitting into the facts of the present case:

"In point of fact the case is absolutely destitute of proof of a single act of influence, undue or otherwise, on the part of Mrs. [Kustus]. There is no testimony to show that she ever, at any time or in any circumstances, even so much as asked him to make a provision in her favor": Johnson's Est., supra.

"The draftsman of a will, especially if a lawyer or conveyancer, is always an important and usually the most important witness in the case, and where as here he had known the testator well for a long time and shows circumstances of voluntary and intelligent action by testator at the time, his testimony makes a prima facie case that requires very strong evidence to offset": Kane's Est., supra, p. 207.

"The suggestion of undue influence in connection with the making of the will springs from the fact that the principal beneficiary, the [plaintiff] in the issue, is a woman with whom the testator, for several years before his death, sustained illicit relations......While it is entirely natural that circumstances such as we have here should excite suspicion in a way to lead to inquiry and investigation, yet of themselves they furnish no sufficient evidence of coercion or constraint in connection with the making of the will: Rudy v. Ulrich, 69 Pa. 177. Where evidence has been offered showing some moral or physical constraint operating on the mind of the testator at the time the will was made, such circumstances as those above referred to may properly be considered in an issue of this kind; but to allow a jury from such circumstances alone to defeat a disposition a testator has made of his property, would be in open disregard of the unquestioned right which everyone master of himself has to give his property to whom he pleases. So far as appears, this testator, in making his will, was interfered with by no one, even to the extent of a request that he would make a will; none of the beneficiaries were pres-

ent at the execution of the will......Whatever may be said in condemnation of the relation sustained by the testator to the [plaintiff] on the ground of its immorality, and the likelihood of such relation resulting in family estrangement, with impairment of individual character, none of these things of themselves can operate to defeat a will giving to the partner in guilt a share of the estate, be it large or small, where the testator at the time of making the will was master of himself. There is not a particle of evidence in this case to warrant an inference that the testator was in any degree subjected to the will or power of another in the act of disposing of his estate": Allshouse v. Kelly, supra.

The judgment of the court below is affirmed.