# Tetlow's Estate.

*Wills—Probate—Contested cases—Testamentary capacity—Undue influence—Province of court and jury—General rules—Practice, C. P.—Appeal—Review.*

1. The law takes practical means to prevent twelve men in a jury box from improperly setting aside the duly expressed wishes of a testator, by vesting in the judge the power to decide whether

or not he shall submit oral evidence to the jury, even though it be conflicting.

2. If, after weighing the whole body of the evidence, the trial judge feels sure that his professional and official conscience would not permit him to sustain a verdict against the validity of the will, either because the contestants' proofs lack probative force or are legally inadequate, or because those that are reasonably worthy of credence raise no material conflict on any governing point, or because the prima facie case which they present has been so overcome by opposing proof as to leave no substantial dispute, it is his bounden duty to instruct the jury peremptorily against the contestants.

3. When the contestants' evidence, "looked at separately," would support a verdict against the will, and the proponent's evidence, viewed in the same way, would command a contrary verdict, the issues involved should be submitted to the jury, unless the court is convinced that the proofs on one side are so strong that they overcome the opposing prima facie case and leave no substantial dispute.

4. If, on a thorough consideration of the testimony, there be found a tangible basis of doubt as to whether or not contestants have in fact sustained the material parts of the case alleged by them, and the court, for that reason, is not certain it would disturb a finding against the will, the issues involved should be submitted to the jury for determination; and unless—on a duly raised reëxamination, after verdict, and applying the tests applicable to this class of cases—the evidence proves insufficient to support the finding of the jury, that conclusion should stand, even though its effect be to set aside the will.

5. The right of either party to an issue depends upon whether there is a substantial dispute on a material matter of fact, and that point the court must determine from a review of all the proofs adduced.

6. Even where an issue has been granted, and it comes to trial, the judge, when circumstances so warrant, may interfere to prevent the jury from unjustifiably setting aside a will.

7. In all such issues the evidence is addressed to the judge sitting as a chancellor quite as much as to the jury.

8. To sustain allegations of undue influence, contestants must show that testator's mind was under its control at the time and in the very act of making his will.

9. A person may be advanced in years and beset with the marked peculiarities of memory and conduct which so often accompany old age, yet if he appreciates, in a general way, who his relatives are, and what property he possesses, and indicates an intelligent under-

standing of the disposition he desires to make of it, he has testamentary capacity.

10. Where on appeal to the Supreme Court, the complaint is that the case was improperly kept from the jury, the propriety of such action is to be judged or tested by the answer to the following inquiry: In view of the relevant rules of law applicable to the particular case, is it conceivable a judicial mind,—desiring only to arrive at the truth and do exact justice, on due consideration of the evidence as a whole,—could reasonably have reached the conclusion of the court below? When the answer to this question is in the affirmative, the judgment appealed from will not be disturbed.

Argued January 31, 1921. Appeals, Nos. 201 and 202, Jan. T., 1921, by Grace Tetlow Sauveur and Henry Tetlow, 2d, from decree of O. C. Montgomery Co., June T., 1919, No. 45, refusing issue devisavit vel non, in estate of Henry Tetlow, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON and SCHAFFER, JJ. Affirmed.

Appeal from decision of register of wills admitting will to probate. Before SOLLY, P. J.

The record disclosed the following facts:

January 8, 1919, Henry Tetlow, of Jeffersonville, Montgomery County, Pennsylvania, died in his 81st year, leaving a will, executed November 8, 1917, in which his widow, Elizabeth Jarman Tetlow, was made executrix and sole beneficiary. Testator was survived by two grandchildren, who are contestants in this case. January 15, 1919, the will was admitted to probate by the register of wills of Montgomery County. January 24, 1919, Henry Tetlow, 2d, and Grace Tetlow Sauveur, grandchildren, appealed to the Orphans' Court of Montgomery County, and subsequently filed a petition for an issue devisavit vel non, alleging testamentary incapacity and undue influence; October 4, 1919, Elizabeth Jarman Tetlow, individually, and as executrix, filed an answer denying these allegations.

The facts relied on by contestants to impel the granting of an issue, as shown by the evidence submitted to

the court below, briefly summarized and chronologically arranged, are as follows:

1887. Contestants' parents were married; and decedent, from the birth of his two grandchildren until 1917, from time to time, expressed his intention to provide for them.

1899. Decedent sold his business to his son.

1901. Decedent's first wife died.

1904. Decedent, at the age of 64, married proponent, a young woman, after the execution of an antenuptial agreement, in which she released her marital rights in his estate; the same year decedent drew a will giving the greater part of his estate to his grandchildren.

1907. Decedent executed a codicil giving his Jeffersonville farm and $25,000 to proponent.

1911. Decedent's son, contestants' father, died.

1914. Henry Tetlow, 2d, states he then noticed that decedent's mind had become sluggish; as evidence of which contestant cites that his grandfather suggested a change in the formula of a certain perfume, manufactured by the Tetlow Company, which would eliminate necessary ingredients.

1916. Decedent had neuritis, seemed forgetful of names and faces and lost his accustomed ability to remember and relate anecdotes. Henry Tetlow, 2d, testified decedent agreed to finance the enlargement and extension of the Tetlow factory; later he refused to do so because, according to the testimony, he didn't remember anything about the proposition; a few days later, according to another part of contestant's evidence, decedent said: "No, I am not going to do anything like that. Don't you know I can't do it? Why I cannot do that. I haven't got the money to do that." This, as alleged, was in reply to his grandson's statement that the extensions would cost $50,000.

1917. Decedent was much affected, in May, by the departure of his grandson to camp, and wept at the parting. Various witnesses testified decedent acted peculiarly

on October 16th, at the wedding of his grandson, in that he kept his overcoat and hat on, and congratulated his grandson without removing either. Contestants say decedent was forgetful, and seemed to think it was the occasion of his son's and not his grandson's wedding; that he did not remember old acquaintances and employees. About November 15, 1917, decedent went to the Battle Creek Sanatorium, Michigan, where an intensive examination was made by a physician, who reported he was affected by arteriosclerosis and constipation, although Tetlow did not seem to think there was anything the matter with him at that time.

1918. In April (some five months after date of will) decedent, in the opinion of his granddaughter, showed signs of failing mentality; and, according to other witnesses, gave further signs of mental weakness in May, June and July, suffering at times from hallucinations (not, however, relating to his children, property, affairs or other matters affecting testamentary capacity), and losing his sense of cleanliness in clothing and habits; which conditions, contestants allege, continued until his death in 1919.

Three experts on insanity (who, however, had not examined decedent during his life, and who, so far as the record shows, did not have explained to them the legal requirements as to testamentary capacity), in answer to hypothetical questions, embodying the facts testified to by contestants' witnesses, and disregarding any question of veracity, expressed the view that decedent was incapable of making a will on November 8, 1917.

As against the opinions just noted, evidence was produced, by contestants themselves, of an actual examination of decedent, by another physician, immediately after the execution of the will, which examination revealed no traces of insanity.

The proponent produced two doctors, who had an opportunity to observe the actual condition of decedent at or about the time of the execution of his will; these wit-

nesses said that, to their trained eyes, he exhibited no signs of weakened mentality until the spring of 1918, several months after the date in question.

According to the testimony of proponent's witnesses, the will was drawn at the written request of decedent, and, previous to its execution, he had discussed the subject with his friend and financial adviser, John H. Mason, president of the Commercial Trust Company.

B. Gordon Bromley, Esq., decedent's attorney, drew the will, as directed in the following letter: "I would like you to make a new will for me. I desire to leave all I have both real and personal, to my wife, Eliza Tetlow, and make her the sole executrix. I will be in Philadelphia, on Thursday, November 8th, and will call on you at that time." Pursuant to this letter, the writer thereof came to Bromley's office, accompanied by proponent, who, for many years before her husband's death always accompanied him wherever he went. The lawyer took decedent into another room and read the will to him; then it was duly executed by decedent and attested by Mr. Bromley, and a Mr. Hay, another member of the Philadelphia bar. Mrs. Tetlow was not present during the execution of the will; both of the attesting witnesses said testator seemed perfectly normal mentally at that time.

John H. Mason, previously referred to, knew decedent in a business way, as well as socially, and met him frequently during 1917. Mr. Mason testified that during this year decedent was sound and keen in his business judgment; he made his own investigations before buying securities, was interesting in conversation, well informed, and appreciative of humor; that decedent consulted him in the fall of 1917 about the feasibility of avoiding unnecessary trouble by leaving all his property to his wife; that he, the witness, was sure decedent was in every way possessed of mental capacity to execute the will on November 8, 1917. The testimony of more than twenty-five witnesses, who knew, and had opportunities

to observe, decedent at or about the time he executed the will, was uniformly corroborative of Mr. Mason's testimony. Proponent was a loving devoted wife, and decedent's constant companion; there was no testimony tending to show undue influence on her part in the making of the will.

The court refused the issue.

Grace Tetlow Sauveur and Henry Tetlow, 2d, grandchildren of testator, appealed.

*Error assigned* was decree, quoting it.

*G. Plantou Middleton,* of *Middleton, Blakeley & Richardson,* for appellants.—An issue should be granted when the evidence is sufficient to support a finding against the will, irrespective of whether the court would if sitting as a jury so find: Phillips's Est., 244 Pa. 35; Knauss's App., 114 Pa. 10; Herster v. Herster, 116 Pa. 612; Miller's Est., 179 Pa. 645; Wilson v. Mitchell, 101 Pa. 495; Adams's Est., 220 Pa. 531; Weaver's Est., 9 Pa. C. C. R. 616.

*Nicholas H. Larzelere,* with him *B. Gordon Bromley,* for appellee.—The issue was properly refused: Shaver v. McCarthy, 110 Pa. 339; Miller v. Oestrich, 157 Pa. 264; Napfles's Est., 134 Pa. 492; South Side Trust Co. v. McGrew, 219 Pa. 606; Mulholland's Est., 217 Pa. 65; McMasters v. Blair, 29 Pa. 298; Richmond's Est., 206 Pa. 219; Douglass's Est., 162 Pa. 567; Morgan's Est., 219 Pa. 355; Pensyl's Est., 157 Pa. 465; Thompson v. Kyner, 65 Pa. 368; Masterson v. Berndt, 207 Pa. 284; Miller v. Miller, 3 S. & R. 267; Eddey's App., 109 Pa. 406; Kane's Est., 206 Pa. 204; Draper's Est., 215 Pa. 314; Cauffman v. Long, 82 Pa. 72.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, February 28, 1921:

Testator, a man well advanced in years, left his entire estate to his wife; two grandchildren, the issue of a deceased son, who had died before his father, appealed

from the probate of the will; their appeal was dismissed by the court below and an issue devisavit vel non refused; these grandchildren (hereinafter referred to as contestants) have now appealed to this court.

The facts testified to are briefly outlined in the reporter's notes, published in connection with this opinion.

Notwithstanding all that has been written recently on the subject, there still appears to be much confusion in the professional mind as to the rules governing litigation of the present class; therefore, with the hope of clarifying the situation, we shall restate some relevant general principles, before particularly discussing the case in hand.

The law is the essence of common sense, scientifically reduced to general principles, or rules, for the guidance of human conduct and affairs, as they concern the relations of men to each other and to organized society as a whole; these rules take cognizance of, and, fortunately, endeavor to guard against, the known frailties of mankind—one of which is a natural tendency to favor the wishes of the living, rather than those of the dead. While methods for settling disputes of fact, founded on substantial testimony, as to either alleged lack of testamentary capacity on the part of a testator or undue influence operating upon him at the time he made his will, are recognized, yet the law—having given to man the right to dispose of his worldly belongings, so that the distribution thereof, after his death, will accord with such written directions as he may leave behind, provided these are in due form, and not violative of legal requirements, and the author thereof acted at the time of their making with testamentary capacity and without undue influence—takes practical means to prevent twelve men in the jury box from improperly setting aside the duly expressed wishes of a decedent, in a suit by those who, wanting to get possession of his estate, have the stimulus of desired gain, with the great advantage in the legal struggle of the persuasiveness on the jury of their

actual presence in court, as against the physical absence of the testator. To protect adequately the legal right of the deceased to dispose of his own property, the law, as administered,—most wisely, in view of the known tendency of jurors, already mentioned,—places large powers in the hands of the judges who preside, as chancellors, at the trial of such cases; and like powers are in effect conferred on judges of the orphans' court to whom applications for issues d. v. n. are made.

It is the established law of Pennsylvania that, in cases of the character of the one now before us, the judge is vested with power to decide whether or not he shall submit oral evidence to the jury, even though it be conflicting. It is his right and duty, after weighing the whole evidence impartially, to refuse to present it to the jury unless he either feels the ends of justice call for a verdict against the will, or is so uncertain on this point that he could conscionably sustain a finding either way on one or more of the controlling issues involved. If, after so weighing the whole body of the evidence, the trial judge feels sure that his professional and official conscience would not permit him to sustain a verdict against the validity of the will, either because the contestants' proofs lack probative force or are legally inadequate, or because those that are reasonably worthy of credence raise no material conflict on any governing point, or the "prima facie case" which they present has been "so overcome by opposing proof as to leave no substantial dispute" (Sharpless's Est., 134 Pa. 250, 259; Fleming's Est., 265 Pa. 399, 406), it is his bounden duty to instruct the jury peremptorily against the contestants: Phillips's Est., 244 Pa. 35; Fleming's Est., 265 Pa. 399, 406.

When, however, the contestants' evidence, "looked at separately," would support a verdict against the will, and the proponent's evidence, viewed in the same way, would command a contrary verdict, the issues involved should be submitted to the jury (Sharpless's Est., 134

Pa. 250, 259, 261; Robinson v. Robinson, 203 Pa. 400, 434), unless the court is convinced that the proofs on one side are so strong that they overcome the opposing prima facie case and leave no substantial dispute; or, again, if, on a thorough consideration of the testimony, there be found a tangible basis of doubt as to whether or not the contestants have in fact sustained the material parts of the case alleged by them, and the court, for that reason, is not certain it would disturb a finding against the will, the issues involved should be submitted to the jury for determination; and unless—on a duly raised reëxamination, after verdict, and applying the tests applicable to this class of cases—the evidence proves insufficient to support the finding of the jury, that conclusion should stand, even though its effect be to set aside the will.

While this court may not heretofore have taken occasion to thus state the law, in so many words, yet where it is claimed that a case, of the character of the one which we are now considering, was improperly kept from the jury, or that a finding therein, against the will, was reversed without due cause, manifold adjudications on like matters, which appear in our reports, show that, when the action of the trial court was based on a consideration of the evidence, the propriety of such action is to be judged, or tested, by the answer to the following inquiry: In view of the relevant rules of law applicable to the particular case, is it conceivable a judicial mind,—desiring only to arrive at the truth and do exact justice,—could, on due consideration of the evidence as a whole, reasonably have reached the conclusion of the court below? When the answer to this question is in the affirmative, the judgment appealed from will not be disturbed.

Under the most excellent system which has developed in Pennsylvania, "the right [of either party] to an issue depends upon whether there is a substantial dispute upon a material matter of fact," and that point the court must determine from a review of all the proofs adduced:

Fleming's Est., 265 Pa. 399, 401, 407; Phillips's Est., 244 Pa. 35, 41, 42. Moreover, even where an issue has been granted, and it comes to trial, the judge, when circumstances so warrant, may interfere to prevent the jury from unjustifiably setting aside a will; and, with this thought in mind, we have said repeatedly that in all such issues "the evidence is addressed to [the judge], sitting as a chancellor, quite as much as to the jury" (Caughey v. Bridenbaugh, 208 Pa. 414, 415; Phillips's Est., supra, 42, and cases there cited). This system constitutes no retraction of, or infringement upon, the institution of the common law jury; it represents merely a correct use of that institution, with limitations appropriate to the circumstances under which it is employed—that employment not being in a common law action, but in a special proceeding, having, as fully recognized by our cases, its historical roots in the ancient ecclesiastical courts, "to which the right of trial by jury did not extend": Fleming's Est., 265 Pa. 399, 408, and authorities there cited.

The case in hand presents allegations of undue influence and mental incapacity. To sustain the charge of undue influence, contestants had to show that testator's mind was under its control "at the time and in the very act of making his will" (Kustus v. Hager, 269 Pa. 103); and, as to the alleged lack of ability to make the will, a person may be advanced in years and beset with the marked peculiarities of memory and conduct which so often accompany old age, yet if he appreciates, in a general way, who his relations are and what property he possesses, and indicates an intelligent understanding of the disposition he desires to make of it, he has testamentary capacity: Thompson v. Kyner, 65 Pa. 368, 378, 380; Kustus v. Hager, supra. Here the case against the will is most weak (without regard to the proofs on the other side), and, when the strong evidence presented by proponent is considered, the proofs relied on by contestants are insufficient to sustain a finding in their favor, either

on the ground of undue influence or lack of testamentary capacity. Therefore, the court below did not err when it refused to grant an issue d. v. n..

The assignments are overruled, and the decree is affirmed, at cost of appellants.