## Wilson's Estate.

*Wills—Testamentary capacity—Issue d. v. n.*

1. The test of the right to an issue *d. v. n.* is whether, after a review of the whole testimony, the trial judge would sustain a verdict against the will as being in accord with the manifest weight of the evidence.

2. The sufficiency of the evidence is for the court.

3. The conclusion to be drawn from the testimony of the witnesses can best be determined by the judge who hears them.

4. No rule requires the award of an issue upon the testimony of the contestants alone.

Exceptions to decree dismissing appeal from the decision of the Register of Wills admitting to probate a paper writing dated Dec. 9, 1921, as the last will and testament of the decedent. O. C. Phila. Co., Jan. T., 1922, No. 452.

This appeal from the Register's action in admitting the paper writing to probate as the last will and testament of decedent was taken by Charles Philip Wilson and John Joseph Wilson, two of the four children of decedent.

Bridget Wilson, the alleged testatrix, died Jan. 15, 1922, at her home, 1928 Parrish Street, Philadelphia, leaving said Parrish Street property, worth about $2500, and also an equity of $2000 in premises No. 1918 Brown Street, and practically no personal property. She was a widow, about seventy-six years of age, and left four children surviving, viz., Annie I. Cathrall, Charles Philip Wilson, John Joseph Wilson and Rose Elizabeth Whiteman, wife of Joseph Whiteman.

By the terms of the will admitted to probate by the Register, Rose Whiteman was given the entire residue of decedent's estate and was made executrix, the remaining three children being given a legacy of $5 each.

Mr. and Mrs. Whiteman resided with the decedent at the time of her death and had for a few years prior thereto. While decedent owned the house in which they lived, they all contributed to the living expenses of the three. Mrs. Whiteman, according to the finding of the auditing judge (Thompson, J.), was a faithful and dutiful daughter, taking care of her mother during her last illness, in addition to preparing food for the family and taking general charge of the house, and he held that it was perfectly natural for the mother to favor Mrs. Whiteman.

The auditing judge reached the conclusion that, bearing in mind the interest of the respective witnesses, their powers of observation, and their ability to express themselves as to their observation, there was no such substantial dispute over a material matter as would justify him in awarding an issue, and dismissed the appeal.

*William Biggerstaff*, for contestants.

*Abraham Wernick* (of *Evans, Forster & Wernick*), for proponent.

GUMMEY, J., Nov. 3, 1922.—Bridget Wilson, whose will is in dispute, died Jan. 5, 1922, at the age of seventy-two years and upwards; the cause of her death was an affection of the kidneys known as nephritis, and she had other infirmities incident to old age.

The contestants allege lack of testamentary capacity, undue influence, and that the will was not the will of the decedent.

There is practically no evidence upon which to base a finding of undue influence, but on the question of testamentary capacity the evidence is to some extent conflicting.

Five witnesses were called on behalf of the contestants, namely, the decedent's sons, Charles Wilson and John Joseph Wilson, the latter's wife, Nellie

Wilson, Margaret Duffy and Dr. Fleming. The testimony of John Joseph Wilson is unimportant; but the testimony of Charles Wilson, Nellie Wilson and Margaret Duffy was to the effect that on the day the will was executed the decedent was in a dying condition, unable to recognize people or to answer questions, most of the time unconscious, in great pain, and she lacked mental capacity to make the will attributed to her; and stress was laid on the fact that on the morning of Dec. 9th, and prior to the execution of the will, the last sacrament was administered to the decedent, although, in this connection, it should be observed that she did not die until twenty-seven days later.

The testimony of Dr. Fleming was not unfavorable to the proponent. His testimony may be summarized by referring to his answers to the questions as follows: "Q. What was the mental condition? A. Really, her physical condition was so distressing, so bad, I paid little attention to her mental condition. To me, it was a matter of a few weeks and she was going to die. She answered me sensibly enough when I asked her these questions -in that way, but in a weak, sometimes very weak, voice, but she would say 'I have pain.' "

And again: "Q. At the time you treated her on Dec. 9th, and prior to and afterwards, you did not consider her mental condition as being incapacitated, except that she was weak, from your observation of her? A. I did not go into her mental condition. I asked her these questions, and she answered me those sensibly enough, 'I have no pain, so tired, I had a bad night, I am so tired;' that is about all she said. Q. She was not in a state of coma on the 9th? A. Not when I was there."

The scrivener of the will testified with great particularity as to the circumstances surrounding its execution, as did also the two subscribing witnesses. All three of them are disinterested, and their testimony is to the effect that the scrivener wrote the will in the decedent's bedroom on Dec. 9, 1921, at about 10 o'clock A. M., in accordance with instructions given him by her; that the will was read to her, and then, as she was unable to write, the scrivener wrote her name, she made her mark and the witnesses subscribed their names, after which the will was read again and handed to the testatrix.

The testimony of Paul Rieker, another disinterested witness, was distinctly favorable to the proponent, as was also the testimony of the decedent's daughter, Anna I. Cathrall, who would benefit in the event of the will being declared invalid, and who was, therefore, testifying against her own interest.

The proponent, Rose Elizabeth Whiteman, could not be called as a witness because she died pending the hearing on the appeal.

The hearing judge, in an opinion in which he discussed the testimony in detail, weighed the evidence and reached the conclusion that there was not such a substantial dispute over a material fact as would justify him in awarding an issue, and, after careful consideration, we have reached the conclusion that his finding should be sustained.

In determining whether an issue should be awarded, the sufficiency of the evidence is a question for the court to determine (see Cauffman v. Long, 82 Pa. 72; Tetlow's Estate, 269 Pa. 486; Goss's Estate, 274 Pa. 278), and the conclusion to be drawn from the testimony of the witnesses can best be determined by the judge who hears them: Steinmeyer v. Siebert, 190 Pa. 471, and cases cited at page 475. Said Mr. Justice Mestrezat in McGinley's Estate, 257 Pa. 478 (481): "In determining the right to an issue, the test is whether, after a review of the whole testimony, the trial judge would sustain a verdict against the will as being in accord with the manifest weight of the evidence."

Further elaboration is unnecessary, except to say that we do not think Tetlow's Estate, 269 Pa. 486, announces a new rule of law governing cases of

this character, as suggested by the hearing judge, and we know of no rule which requires the award of an issue upon the testimony of the contestants alone. See Clark's Estate, 22 Dist. R. 673; Phillips's Estate, 244 Pa. 35.

The exceptions are dismissed.