## Peterson's Estate

*John F. Headly, J. Claude Bedford* and *Robert T. McCracken*, for exceptant. *Charles C. Perkins* and *Francis B. Bracken*, contra.

HENDERSON, J., March 24, 1933.—In the exceptant's brief he sets forth in the "statement of the questions involved" three questions involved in the exceptions, which we will quote in the language of the brief:

"1. Where, upon appeal from the decision of the register of wills admitting to probate a certain paper writing as the last will and testament of a decedent, purported copies of prior wills are placed in evidence by the proponents which give one of the contestants no interest in the decedent's estate, can such purported wills furnish a basis for denying the claims of the contestants?

"2. Where, upon such an appeal from the decision of the register of wills the contestant's case is such that standing alone a verdict against the will should be granted, is the hearing judge justified in refusing to grant an issue devisavit vel non merely on the grounds that he does not believe the testimony of contestant's witnesses, where the credibility of such witnesses has not been attacked?

"3. Is there such a confidential relation between a decedent and a woman of no blood relationship that shifts the burden of proof to proponents of decedent's will, where the woman and her son have received from decedent during a period of some sixteen years gifts amounting to hundreds of thousands of dollars and she is an attorney in fact for decedent, has charge of his check book and business affairs, and she and her son are given the bulk of decedent's estate by his alleged last will and testament?"

We will, in turn, consider these questions. Several earlier wills or copies thereof were, without objection, introduced into evidence. None of them were questioned at the hearings, and all of them were considered and regarded for what light they threw upon the will now contested. Had any of them been objected to on the ground of forgery or other impugning reason, another question might have arisen, but such was not the case.

The will of 1927 may be said to set up a framework for the later wills. At that time his capacity was unquestioned. He provides for certain of his relatives, friends, his wife's relatives, his servants, and certain charities. In it his godson, Arthur Peterson Hayden, receives the bulk of this estate. The later wills follow these general lines—the charities and certain of the legacies being diminished. In each the godson is the principal beneficiary. In the will of 1927 Mildred Hayden gets $100,000 in trust, and the same in the will of 1929; she

gets $200,000 in trust in each of the several wills of 1930. These wills afford a background to this proceeding and throw a flood of light on the testator's purposes as they appear in the instant will. Much of the testamentary intent therein had its origin in the will of 1927.

On this question we conclude that earlier unquestioned wills are very helpful in the contest of a later one: Lawrence's Estate, 286 Pa. 58, 70.

The second question is: May the chancellor who has heard the witnesses, observed their demeanor, and weighed their testimony, refuse credibility to the witnesses of the contestant?

In Snyder's Estate, 279 Pa. 63, 66, Mr. Justice Simpson said:

"At the outset we are again faced with the perennial contention that because the imperative 'shall,' appears in section 21 (b) of the Act of June 7, 1917, P. L. 363, 382, an issue must be awarded, if there is any evidence upon which a jury, sitting as at common law, could find a verdict against the will. A jury is not, however, the only arbiter of the facts in this class of cases, and for nearly a century we have consistently so held. It suffices to refer to Phillips' Est., 244 Pa. 35; Tetlow's Est., 269 Pa. 486, and Doster's Est., 271 Pa. 68. While there is ample authority for the proposition that, if contestant's evidence makes out a case for the jury, an issue should be awarded, unless proponent's is so strong as to render it clear that, in conscience, a verdict against the will could not be sustained; yet it is the chancellor's conscience, and not a jury's which is to be satisfied in the first instance. When his enlightened conscience stands in the way of an issue, it should never be awarded."

The principal witness as to undue influence was Gaines, the butler. May we say the hearing judge erred in refusing to credit his testimony when it appears that he was flatly contradicted by Mrs. Hayden and Joseph Carson of this bar, and when it furthermore appears that he slipped at a vital point in his testimony, was put back on the stand to make a correction, and without convincing the hearing judge? With Gaines's testimony eliminated, the charge of undue influence fell to the ground.

The allegation of want of testamentary capacity was largely predicated on the testimony of Dr. Caley, who was the testator's physician for many years, and it should be observed that he takes nothing under any of the wills. From the record it appears that when the doctor took the witness stand he had numerous notes which he had made a few days before the hearing and from which he intended to testify. He was asked what they were, and he replied that they were copied from his ledger. Upon being pressed further and producing his ledger, it was found that they consisted of conclusions to which he had intended to testify from the notes in his ledger showing the treatment prescribed. He was not permitted to further use these notes. His testimony having been prepared this way in advance, his bias was such that the hearing judge refused to credit it. Furthermore, the hearing judge was in a position to observe his demeanor and bearing, and, hence, was justified in saying that this testimony was unreliable; without it the charge of incapacity falls to the ground.

The third question propounded by the exceptant alleges that Mrs. Hayden stood in a confidential relation to the testator and, hence, the burden of proof is cast upon her. The principal reasons alleged are the large sums given to her and her son, and a power of attorney to go to decedent's safe deposit box. The gifts certainly do not constitute a confidential relation; the same may be said of the power of attorney simply to go to his box. The term confidential relation has never been extended to comprise a trust in the honesty of another, and we know of no case which goes so far.

The granting of the issues prayed for to test the validity of the whole will would work a grave injustice to all named therein other than Mrs. Hayden and her son.

This will is most natural considered in the light of the earlier wills, the testator's family, his wife's family, and his friends and servants.

The exceptions are dismissed and the decree of the hearing judge dismissing the appeal and remitting the record to the register of wills is confirmed absolutely.